## SOPHIA WAGGONICK ET AL.

### v.

## THE WESTCHESTER FIRE INSURANCE COMPANY.

34   629
104   ²397

*Fire Insurance—Conditions of Policy—Proof of Loss—Waiver—Change of Occupation.*

1. Denial of liability by an insurance company or its agent releases the assured from the necessity of making proofs of loss.
2. If an insurance policy provides that it shall be avoided by an increase of risk in a change of occupation, "within the knowledge of the assured," it will not be affected by a change of occupation unknown to him.

[Opinion filed June 13, 1890.]

APPEAL from the Circuit Court of White County; the Hon. W. C. JONES, Judge, presiding.

Messrs. P. A. PEARCE and JOHN M. CREBS, for appellants.

Mr. N. HOLDERBY, for appellee.

REEVES, P. J. On the 8th day of November, 1886, appellee issued its policy of insurance to Christopher Waggonick, by which it insured his one-story frame dwelling house, occupied by a tenant, located in the city of Carmi, for the sum of

$600. Waggonick died testate. By his will he devised said house and the lot upon which it stood, to appellant Caroline Houk, subject to a life estate, by the will devised to appellant Sophia Waggonick. On the 10th day of February, 1888, while said policy was still in force, the house was destroyed by fire, and appellee declining to pay the loss, this suit is brought to recover the same. It sufficiently appears that the loss exceeded the amount of the policy. The defense offered by appellee is two-fold. First, appellee claims that no proof of loss was furnished by the assured, as required by the policy, and second, that there was such a change in the character of the occupation, as rendered the policy void. On the 7th day of March, 1888, the agent of appellants sent to appellee what purported to be proofs of the loss under the policy, and the same were received by the company March 9th. On the 17th day of March, the company wrote a letter to the agent of appellants, pointing out certain defects in the proofs sent, and in the letter this statement was made: "Until proof of loss is made and forwarded to the company, clearly showing the premises were not used for purposes of prostitution, * * * we shall be obliged to deny all liability." The policy contained a provision that "if the risk be increased by any change in the occupation of the building or premises herein described, or by the occupation or erection of adjacent buildings, or by any means whatever, *within the knowledge of the assured*," the policy should become void. It will be observed that only such change in the occupation as increases the risk and is within the knowledge of the assured, renders the policy void.

It will be further observed that by one requirement of the company in its letters, appellants were called upon to show clearly that at the time of the fire the house was not used for purposes of prostitution, without regard to whether such use was within the knowledge of the assured or not; and if it was so used, whether within the knowledge of the assured or not, the company denied all liability. Soon after the fire the company sent its adjuster, Mr. Reynolds, to examine into the case, and we think the evidence shows that at that time he denied

the liability of the company. The evidence is conflicting as to what he said on that occasion, but upon the whole evidence, both as to what he said and what he did, according to his own testimony, in making a tender of the premiums that had been paid in settlement of the loss, it seems to us that the conclusion is well nigh irresistible that the adjuster did deny all liability of the company to make good the loss. This, taken in connection with the demand by the company that the proof of loss should clearly show that the house was not used for purposes of prostitution, whether the assured knew it or not, or the company would deny all liability, was sufficient to release the assured from making further proof of loss.

The other defense is that there was such a change in the character of the occupation of the property as rendered the policy void. The house is described in the policy as a dwelling house occupied by a tenant. The evidence shows that the owners did not live in Carmi and the property was in charge of George Wust, agent of the owners. He leased the house to the tenants who occupied it at the time of the fire, in July, 1887, for a dwelling. He testifies that he knew nothing of the character of the house while in the occupation of these tenants and never heard until after the fire that the tenants were not virtuous people. The only evidence that tends to contradict this is that of the city marshal, who says that before the fire, how long he declined to say, he talked with Wust about these people and notified Wust of complaints as to the house, and, as he says, Wust asked him if he had evidence that these people were keeping an improper house, and he told Wust he did not; that all he knew was the complaints that had been made to him; that it had " been run very quiet; the women hardly ever came up town or on the streets." Waiving the question whether the change in the occupation of the house would render the policy void, without proof that the risk was thereby increased, it must be conceded that under the terms of this policy, it must be shown that such change in the occupation was known to the assured. The evidence fails to show this.

The instructions given for appellee made it the duty of the

jury to find for defendant, if they found there had been a change in the occupation of the house from a dwelling to a house of prostitution, whether appellants knew it or not. The language used in this policy is widely different from that used in the policy considered in Cedar Rapids Insurance Co. v. Shimp, 16 Ill. App. 248. The language there used was: " If the premises be used for any other purpose than is mentioned in said application without the consent of the company in writing, then this policy shall be void." It did not matter under the Cedar Rapids policy whether the change increased the risk or not, or whether the change in the use was known to the assured or not; but under the policy issued by appellee both these particulars must appear in order to a forfeiture of the policy. There was manifest error in the 5th, 9th, 10th and 12th instructions given for the defendant. The court also should have given the two instructions asked by the plaintiffs, which were refused. The judgment of the Circuit Court is reversed and the cause remanded.

*Reversed and remanded.*