Case 59.—ACTION BY THE UNION STOCKYARDS CO., AGAINST THE NORTH BRITISH MERCANTILE INS. CO., OF LONDON AND EDINBURG ON A POLICY OF INSURANCE.—May 5.

## Mercantile Ins. Co. of London and Edinburg v. Union Stock Yards Co.

Appeal from Jefferson Circuit Court, Common Pleas Branch (First Division).

EMMETT FIELD, Judge.

Judgment for Plaintiff. Defendant appeals. Affirmed.

Fire Insurance—Removing Hazard—Misrepresentation by Insured —Knowledge of Agent—Sub-agent—Acts of Insured's Tenant —Ignorance of Insured—Increasing Risk—Restoring Conditions—Effect—Liability of Insurer.

1. Fire Insurance—Increasing Hazard—Misrepresention by Insured—Appellant had a policy on a building in which baled rage were stored, which are extra hazardous, and allowed a rebate on the risk by reason of information given by Wood, the secretary of the insured, that the rags had been removed. The policy provided that "this entire policy shall be void if the insured shall conceal or misrepresent in writing, or otherwise, any material fact concerning the insurance or the subject matter thereof, or if the hazard be increased by any means within the control or knowledge of insured." This information, though false, was believed by the informer to be

true. He did not profess to have any personal knowledge as to the removal of the rags, but upon inquiry of the insurer informed the inquirer of his course in learning whether the rags had been removed, which answer he believed to be true. Held—That such answer was not a concealment or misrepresentation.

2. Knowledge of Agent—Sub-agent—If Wood, the agent of insured, knew that rags were stored in the building and concealed it from the insurer, such a fact would have been binding on the insured, but the knowledge of Wood's agent, who was not the agent of Wood's principal, is not imputable to the latter.

3. Acts of Insured's Tenant—Ignorance of Insured—The fact that the rags were stored in the building by O'Brien, who was the tenant of insured, although in violation to the tenant's rightful use of the premises, does not affect the policy if the insured was ignorant of it, although it was a matter which he might have controlled had he known it, or although he knew of it, yet if it was a thing beyond his control the policy is not affected by it.

4. Increasing Risk—Restoring Conditions—Liability of Insurer—The fact that the risk was increased after the issuing of the policy, by the storing of rags without the consent of the insurer, yet if the extra hazardous condition was removed before there was a fire, then the condition remained precisely as when the contract was made, and while the liability of the insurer was suspended during the time of the existence of the condition, if the fire had then occurred, insurer would not have been liable. But if before loss, and during the time covered by the policy, the original condition was restored, the liability of the insured was restored also and it was thereafter liable for the loss.

HENRY BURNETT for appellant.

POINTS AND AUTHORITIES.

1. Where the insured applied to the insurer for permission to store baled rages on the premises, and the permit was given in consideration of an extra premium paid; and afterward the insured demanded the return of the unearned extra premium and represented that all the rags had been removed, and the unearned extra premium was returned, and a fire occurred shortly thereafter, and it appeared that a substantial quantity of the rags was still in the insured building, the representation, being of a material fact, and having caused a reduction of the premium, must be deemed a warranty, and, being false, the liability of the insurer ceased,

North British Mer. Ins. Co. v. Union Stock Yards Co.

2. The mere fact that a tenant in possession moved the rags from one building, but failed to move the rags from another building—both being covered by the same policy—does not relieve the insured from liability for a breach of warranty, even though the insured did not know of the presence of the rags, and believed that all had been removed. (May on Insurance, Fourth Ed., vol. 1, sec. 227; Liverpool, London & Globe Ins. Co. v. Gunther, 116 U. S., 128; Kelly v. Worcester Mutual Fire Ins. Co., 97 Mass., 284; Fire Association v. Williamson, 26 Penn. St., 196; Duncan v. Farm Building Ins. Co., 73 N. Y., 310; Joyce on Insurance, vol. 3, secs. 2209 and 2222; Witherell v. City Fire Insurance Co., 16 Gray (Mass.), 276; First National Bank of Ballston v. Ins. Co., 50 N. Y., 45; Appelby v. Firemans, &c., Ins. Co., 45 Barb. (N. Y.), 454; Diehl v. Adams Ins. Co., 58 Penn. St., 443; Howell's Ex'rs v. Baltimore Eq. Society, 16 Md., 337; Dittmer v. Germania Ins. Co., 23 La. Ann., 458; Boatright v. Aetna Ins. Co., 1 Strob. (S. C.), 281; Western Assurance Co. v. Rector, 85 Ky., 294; Ky. Stats., sec. 639.

DALLAM, FARNSLEY & MEANS for appellant.

POINTS AND AUTHORITIES.

1. Rags stored on premises increase the hazard.

2. Loose rags constitute a greater hazard than baled rags.

3. Baling rags is an additional hazard, and was not permitted under the terms of the policy.

4. The hazard was increased by means within the control of the insured.

5. So, too, was the hazard increased within the knowledge of the insured.

6. Each additional use of the insured premises for a purpose of a hazardous nature, without the consent of the insurer, whether such additional hazard comes within the same class of hazards, as specified in the rider, or belongs to a higher or lower class, renders the policy void. (Lee v. Howard Fire Ins. Co., 3 Gray, 592; Wash. Mut. Fire Ins. Co. v. Mer. & Man. Mut. Ins. Co., 5 Ohio St., 450; May on Insurance, sec. 237.)

7. It is not necessary that the increased hazard should cause the loss. (Martin v. Capital Ins. Co., 86 Iowa, 643.)

8. Yet it is clear that the fire did first spread to and ignite these rags.

9. It is not necessary to show that the assured knew the rags were in the frame buildings. It was its duty to know what use was made of its property, certainly if it was open and notoriously used in an unauthorized manner.

10. It is immaterial whether the rags were placed there by a

tenant or not. The effect is the same and the policy is void. (Long v. Beeler, 51 Am. Rep., 532; Hobby v. Dana, 17 Barb., 111.)

11. A misrepresentation of a material fact will avoid a policy, even though there is no provision to that effect in the contract. (16 Encyc. of Law, 2d Ed., pages 932, 933; Germania Ins. Co. v. Rudwig, 80 Ky., 223; Union Cent. Life Ins. Co. v. Lee, 20 Ky. Law Rep., 839; Warren Deposit Bank v. Fid. & Dep. Co., 25 Ky. Law Rep., 289; Provident Savings Assurance Society v. Dees, &c.)

12. Any matter is material that increases the risk or enhances the premium. (Brignac v. Pac. Mut. Life Ins. Co., 112 La. An., 574; Armour, &c. v. Trans. F. Ins. Co., 90 N. Y., 450; Columbia Ins. Co. v. Lawrence, 10 Pet., 507; Carpenter v. Am. Ins. Co., 1 Story, 57; Bankers' Life Ins. Co. v. Miller, 59 Alt., 116.)

GIBSON, MARSHALL & GIBSON for appellee.

## POINTS.

1. By the terms of the rider attached to the policy the right to store baled rags was limited to brick building, and on the 4th of April, 1902, when this privilege was rescinded, there were no rags whatever in the brick building.

2. Appellee never represented that all of the rags had been removed from the premises, but that they were out of the brick building—the only place in which it had ever any knowledge that rags had been stored.

3. The rider attached to the policy revoking the privilege contains only a representation that the rags stored in the brick building had been removed, and can not, by implication, be so enlarged as to establish a warranty that all the rags had been removed from the premises. This rider, in exact terms, annulled and destroyed the rider containing the original privilege, so that both ceased to be a part of the contract prior to the time of the fire.

4. At the time of the fire, appellant could only avail itself of the clause in its policy avoiding the insurance, "if the hazard be increased by any means within the control or knowledge of the insured."

5. Appellee is not responsible for the act of a former tenant in leaving rags upon the premises, without its knowledge or consent. (Sandford v. Mechanics Mutual Fire Ins. Co., 12 Cush., 541; Hall v. People's Mutual Fire Ins. Co., 6 Gray, 191; White v. Mutual Fire Ins. Co., 8 Gray, 567; Merrill v. Insurance Co. of N. A., 23 Fed. Rep., 247; Neb. & Iowa Ins. Co. v. Christensen, 29 Neb., 580.)

6. The few rags left did not increase the risk, as they did not

cause or contribute to produce the fire upon the premises of appellee.

OPINION BY JUDGE O'REAR—Affirming.

Appellee, Union Stockyards Company, owned a lot of land in the eastern part of Louisville, about 200 feet square, on which were situated their stock pens and a 2½ story brick house. An insurance against loss by fire was effected by policies written by several different companies, including one by appellant company, which is in suit. The stock pens constituted a frame building or shed, two stories high. On the ground floor were stalls for cattle or horses; on the second floor were pens for sheep. Some time after the policy was issued, appellee rented the brick building to one O'Brien for storing rags. The original rate of insurance on the buildings was $1.50 on the $100, but when used for storing baled rags it was $2.50 per $100. A "rider" was put on the policy, as follows: "Privilege to make additions, alterations or repairs, and to store baled rags in brick buildings insured under this contract." The stockyards company contends that it rented to O'Brien only the brick building. O'Brien testified that he rented the whole of the property, subject to the right of his landlord to rent it to others, whereupon he was to surrender the portions so let to others. O'Brien was to quit, whenever notified, upon five day's notice. The following February the stockyards company leased the whole of the property to Hudson Bros. as a horse and mule market, and notified O'Brien to give immediate possession. Carpenters and other workmen began work remodeling and repairing the buildings for occupancy by Hudson Bros., who in fact moved in on April 1st. April 4th the stockyards company notified the insurer that O'-

Brien had quit the buildings rented to him, and that his rags were removed. Whereupon an additional rider was added to the policy, as follows: "In consideration of $16.50 returned assured, the privilege to store rags in buildings assured under this policy is hereby rescinded, the rate now being $1.50." On April 26th the buildings were totally destroyed by fire. It then developed that O'Brien had used not only the brick building for storing baled rags, as permitted by the policy, but had stored baled and loose rags in considerable quantities in the brick building and the frame buildings indiscriminately. In fact, there was quite a quantity of loose rags in the sheep pens of the frame building when the fire occurred. The insurer denied liability, and resisted payment under the policy on the grounds (1) that the policy had become void by reason of material and false misstatements made by the assured concerning the removal of the rags, and (2) that the hazard had been increased without its consent by the assured having, through its tenant, suffered the premises to be used in an occupation more hazardous than that contracted. These two defenses arise under the following conditions in the policy: "This entire policy shall be void if the insured shall conceal or misrepresent, in writing or otherwise, any material fact or circumstance concerning the insurance or the subject thereof, or in case of false swearing or fraud by the insured, touching any matters relating to this insurance or the subject thereof, whether before or after the loss. This entire policy, unless otherwise provided for by agreement, endorsed thereon or attached thereto, shall be void if the hazard be increased by any means within. the control or knowledge of the insured." The verdict of the jury and the judgment of the court having been adverse to appellant, this appeal is taken to cor-

rect what it is urged are prejudicial errors committed against appellant on the trial.

The defenses outlined above were put at issue, and were submitted under an instruction which will be noticed particularly further along. An analysis of the defenses will better enable us to apply the trial court's instruction. It may be conceded that the fact that rags, when stored in the buildings in considerable quantities, became a material circumstance concerning the insurance. The parties by their conduct have so treated it. And it would seem, from the very nature of the thing, to be so. Consequently, a concealment or misrepresentation of that fact by the assured, if it was a fact, came within the provision just quoted. Baled rags to be stored in the brick building was consented to, and the privilege and risk paid for. When the assured applied for a rebate of the unearned portion of the premium for that additional risk (some months yet which were covered by the policy not having expired), its secretary, Wood, was inquired of by the agents of the insurer whether the rags had been removed. He answered that he would ask the superintendent, Birch, to see in person and report. Birch was called by telephone, and told to examine and report whether O'Brien had removed the rags. In about 30 minutes he reported that O'-Brien had vacated the leased premises, and that the rags were gone. Wood repeated this statement to the insurer, whereupon the unearned extra premium was paid back, and the second rider above quoted was pasted upon the policy. Now, as a matter of fact, Birch did go and examine the brick building, and O'Brien had vacated it, and had then removed from it all his rags. Birch, who had made the contract of renting with O'Brien, understood that O'-Brien had rented the brick building only, and had oc-

cupied it alone for storing rags; consequently he did
not examine the cattle and sheep pens in the frame
buildings, and testified that he had no thought that
O'Brien had any rags stored there, as he had no
right to do so. Still, the truth was that O'Brien at
that time did have loose rags stored in the frame
buildings in considerable quantities. The question
is, was this a misrepresentation or concealment of the
fact by the assured? It was not a concealment, un-
less it was actually known at the time. But it was
not known. At least, such is the result of the jury's
verdict, which seems to us to be sufficiently supported
by the evidence. But a misrepresentation may be
made without knowledge of its falsity. If the repre-
sentation as made, was material, and was untrue
the motive and the knowledge of the maker are alike
immaterial; the policy would be avoided. The in-
surer, who had knowledge, aside from the statement
upon the policy, that rags, even in unallowed condi-
tion and places, had been kept on the insured premises,
inquired of the assured's managing agent whether
they were then (April 4th) there. This agent did not
profess to have any personal knowledge on the sub-
ject. Indeed, he disclaimed having any, but informed
the inquirer of his course in learning whether the
rags permitted by the policy had been removed.
That course was adopted. The inquiry made through
the medium of Wood became the direct inquiry of
appellee. The act of Birch in assuming to acquaint
himself with the facts so as to answer it, and in an-
swering it, represented the assured. So it turned out
that the insurer, having in mind, rags stored, baled
and loose, in the brick as well as in the frame build-
ings, made an inquiry in general terms, not specify-
ing anything beyond what was inferable from the
language used in the rider, and Birch, knowing noth-

ing of any rags other than those which had been stored in the brick building, and not understanding that O'Brien had any right whatever to store any elsewhere on the premises, answered the question literally, truthfully and conscientiously, so far as this record shows. It is not enough that the insurer may have been misled by the form of the inquiry. Both acted honestly. Birch's statement, being true within itself, and as he fairly may have understood and did understand the inquiry, could not in any sense be a misrepresentation. It turned out that, by misunderstanding the inquiry, Birch made no response in fact, to it. It was then, in fact, unanswered. That the insurer was misled into an erroneous belief is doubtless true. But Birch was also misled, the effect being that the inquiry was of one thing, while the answer was, by mistake, concerning another. Nor, under this phase of the case, is it material whether O'Brien was in fact rightfully occupying the whole premises. As Birch understood that he was occupying the brick building only, his statement was made with reference to that fact. His statement was not inconsistent with his assumption, and, with it in mind, was in every sense the truth. It will be admitted that if Birch had had in mind the same premises which the inquirer had, but had by oversight or mistake misrepresented the fact in his answer, it would have been a misrepresentation, motive having no part in the matter. But no statement can be a misrepresentation of a fact that was not made with reference to such fact, but was made of an entirely different, although a similar, one.

It is claimed that the policy was avoided, also, because of Wood's concealment or misrepresentation of the fact that baled and loose rags had been stored in both the brick and frame buildings, when he knew it

was in violation of the implied, if not the express, prohibitions of the contracts. The firm of Wood, Bacon & Co., of which appellee's secretary, Wood, was a member, was a brokerage firm, writing and procuring fire insurance contracts. The firm obtained a policy for O'Brien on rags stored in these buildings, both brick and frame. It is claimed that this fact brought the matter at least to Wood's constructive knowledge. Wood testified that he had not seen that policy till after the fire, and did not know it contained such description. The facts were, it was issued by one of the clerks of the firm, who testified that she had not called Mr. Wood's attention to it; that she had copied the description of the buildings from the registry of an old policy issued to appellee stockyards company, and had mistakenly supposed the rags were to be stored in all the insured buildings. Wood's knowledge, however obtained, would have been the knowledge of his principal in the latter's affairs. But the knowledge of Wood's agent, who was not the agent of Wood's principal is not imputable to the latter.

The second clause of the section of the policy quoted constitutes really the storm center of the case. The argument is that, as O'Brien was the tenant of appellee stock yards company, he was under its control; that, if he used the insured premises so as to increase the hazard insured against, it is the same as if the assured had done it. There are authorities which undoubtedly so hold. Where the tenant is using the leased premises in the manner contracted, there can be no doubt that his use is the same as that of the landlord in affecting the risk. The cases which hold that the tenant's misuse of the insured premises whereby the hazard is increased is imputed to the landlord, although in violation of the tenant's rightful use, and without the knowledge or consent of the landlord, are

all founded upon that class of contracts where the provision is against such use at all, and are express covenants treated as warranties, or are cases bottomed on those of that character. In the policy being considered the stipulation is not in any sense a warranty; on the other hand, it admits, at least by implication, that extrahazardous use may be made of the insured building without the policy being affected, for it is provided that the policy will be voided only in the event the "hazard be increased by means within the control or knowledge of the assured." If the assured was ignorant of it, although it was a matter which he might have controlled had he known it, the policy is not affected. Or, although he knew of it, yet if it was a thing beyond his control, neither is it affected. Such seems to us to be the reasonable construction of the language as setting forth the intention of the parties.

A further argument is that the insured premises were, during the tenancy of O'Brien, used for storing and baling loose rags, whereas the only thing permitted with reference to rags was the storing of baled rags—this with reference particularly to the brick building, which all admit was leased to O'Brien. It is also argued that this extrahazardous use, being beyond the risk assumed by appellant under the contract, became a violation of it, under the clause quoted hereinbefore, and operated to make it void by the express provision of the agreement, although the loss was not occasioned or contributed to thereby. Authorities are not lacking apparently supporting the contention. The contract was intended to insure appellee against loss or damage by fire during the term for which the consideration was paid. The amount of consideration was calculated upon the nature of the risk, as stated, and not upon some other or greater.

The insurer had the right to stipulate that it would not assume other hazards than the particular one indicated in the contract, and that, if it was increased, the insurer's liability was not to cover it. If the assured did or permitted anything to increase the hazard, then, while that condition lasted, the contract was not in operation. However, if the extrahazardous condition was removed before there was a fire, then the condition remained precisely as when the contract was made. The insurer, without complaint, retained the premium or consideration for its carrying the liability. To declare the contract at end for all time, would be to. forfeit the unearned premium to the insurer. It would be the imposition of a money penalty against the assured for violating a condition of his contract, although no damage had ensued from it. Such forfeitures are repugnant to the law. The better reason, and the right of the matter, seems to us to be, that, while the forbidden condition is permitted by the assured to exist, the contract will be suspended. If loss then occurs, the insurer would not be liable. But if before loss, and during the term covered by the policy, the original condition is restored, the liability of the insurer is also. This gives to the assured precisely what he bargained for. It exacts nothing from the insurer beyond what it has assumed and taken pay for.

Consequently the use of the leased premises for even forbidden purposes, but which had been discontinued long before the fire, was not an obstacle to the right of appellee to recover upon the policy, and the trial court was correct in so holding.

The instruction given to the jury was as follows: "The court instructs the jury that they. should find for the plaintiff in the sum of $2,500, with interest from the 10th day of July, 1902, unless they shall be-

lieve from the evidence that, when the fire occurred which destroyed the insured premises, there were rags stored upon the said premises, with the knowledge of plaintiff, which increased the hazard of the defendant on the policy sued on; or that on or about the 4th day of April, 1902, the plaintiff falsely represented to the defendant that all the rags had been removed from the said premises, and that in consideration of that representation a part of the premium theretofore paid was returned to the plaintiff. If either of said statements is the fact, the law is for the defendant, and they should so find.'' This instruction did not submit to the jury whether O'Brien's lease covered the entire property, or the brick building only. There are two reasons for this: One, if it did cover the whole property, still O'Brien had leased only to store baled rags. If he, without the knowledge or consent of the assured, stored loose rags there, it was what he had not the right to do, and was as if done by a trespasser. Again, although the lease may have been of the whole property, it was admittedly determinable upon five days' notice by the landlord, which was given more than two months before the fire, and was apparently acted upon. Therefore, O'Brien was not a tenant of any part of the premises at the date of the fire. His failing to remove all his property left him in the attitude of a trespasser, whose acts, unknown to the owner, no authority holds can be imputed to the owner as his in working a forfeiture of his insurance contracts, although such trespasser's acts may have increased the hazard, or even caused the fire. The presence of any rags—a very small and inconsiderable quantity—is not, as a matter of law, an increase of the hazard. The hazard caused by their presence necessarily depends upon their quantity. It was therefore

proper, under the evidence in this case, to submit to the jury whether, in fact, the hazard was increased by the quantity of rags that were there. While it was admitted that some few rags and trash were left on the insured premises by O'Brien, it was denied that they were such as to increase the orignial hazard. The submission to the jury of the question whether appellee's agent falsely misrepresented that the rags had been removed was not to submit to them whether the rags had all been removed—for it was conceded that they had not been—but whether appellee's agent had so stated.

We perceive no error in the record, and the judgment is affirmed.

Petition for rehearing by appellant overruled.