ROYAL EXCH. ASSURANCE OF LONDON v. THROWER. *

(District Court, N. D. Georgia.  March 12, 1917.)

No. 1319.

1. INSURANCE ⬅️665(3)—FIRE INSURANCE—SUFFICIENCY OF EVIDENCE—KNOWLEDGE OF INCREASED HAZARD.

In a suit between a fire insurance company and the owner of an insured warehouse, evidence *held* not to show that the insured had knowledge that his lessee had installed machinery in the building which increased the hazard.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1711–1716.]

2. INSURANCE ⬅️316—FIRE INSURANCE—INCREASING HAZARD—"CONTROL."

Within a provision forfeiting a fire insurance policy if the hazard be increased by any means within the control or knowledge of the insured, "control" involves some knowledge of the hazardous use of the building, and the policy is not avoided by acts of a tenant increasing the hazard which are not within the owner's knowledge.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 744–747.

For other definitions, see Words and Phrases, First and Second Series, Control.]

3. INSURANCE ⬅️146(3)—CONSTRUCTION OF POLICY—AVOIDING FORFEITURE.

Insurance contracts should be construed, if possible, so as to avoid forfeiture.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 295.]

⬅️For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes
*For opinion on motion for rehearing, see 240 Fed. 1024.

4. INSURANCE ⬤⇒492—FIRE INSURANCE—INCREASED HAZARD—SET-OFF OF PRE-
MIUM.
Where the hazard under a fire insurance policy was increased by acts
of a tenant without the knowledge of insured, so as not to avoid the pol-
icy, the claim of insured on the policy should be reduced by the amount
of additional premiums required for a policy covering the increased
hazard.
[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1262–1265.]

In Equity. Suit by the Royal Exchange Assurance of London
against Marvin L. Thrower. Decree entered allowing defendant his
claim for set-off against the mortgage held by complainant. ·

King & Spalding, of Atlanta, Ga., for plaintiff.
Wimbish & Ellis, of Atlanta, Ga., for defendant.

NEWMAN, District Judge. This case arises in this way: On the
15th day of June, 1908, Marvin L. Thrower took a policy of insur-
ance on a certain property described as "a one-story frame, composi-
tion roof, building and additions thereto attached, occupied for ware-
house and storage purposes, situated on Irwin street, Samson street,
and the Southern Railroad, in Atlanta, Georgia," for $5,000. Attached
to the policy was the standard mortgage clause, which provided that:

"Loss or damage, if any, under this policy, shall be payable to Mrs. Caroline
Hertzfeld, as mortgagee, as her interest may appear."

In this mortgage clause was a provision that:

"Whenever this company shall pay the mortgagee any sum for loss or dam-
age under this policy, and shall claim that, as to the mortgagor or owner, no
liability therefor exists, this company shall, to the extent of such payment, be
thereupon legally subrogated to all the rights of the party to whom such pay-
ment shall be made, under all securities held as collateral to the mortgage debt,
or may, at its option, pay to the mortgagee the whole principal due or to grow
due under the mortgage, with interest, and shall thereupon receive a full as-
signment and transfer of the mortgage and all of such other securities; but no
subrogation shall impair the right of the mortgagee to recover the full amount
of her claim."

On the 12th day of June, 1909, the building covered by the policy
was destroyed by fire and was a total loss. The insurer claims that
the policy was void as to Thrower, the mortgagor, and the company
paid to the mortgagee, Mrs. Hertzfeld, the amount of the mortgage,
having the note and loan deed transferred to it, and instituted the
proceeding here to foreclose the mortgage. The defendant, Throw-
er, set up in his answer, by way of defense, that the payment of the
mortgage did not amount to a purchase of the note, but was a pay-
ment for his benefit under the policy of insurance issued to him, and
that he is entitled to have the amount due him under the policy offset
against the amount of the note. The contention of the company is
that the policy has been rendered void by the insured by an increase of
the hazard.

The question really presented here for determination, and the ques-
tion about which evidence had been offered, and on which the case
was argued and submitted, is whether there was a liability by the com-

pany on this policy issued by it to Thrower, or whether, by increasing the hazard, there had been a forfeiture of all rights under the policy, and there is no right of recovery, and has not been since the alleged increased hazard leading to the forfeiture.

The evidence shows that the property was insured as a building occupied for warehouse and storage purposes, and it was leased to the A. A. Smith Cotton Products Company, under a lease for 12 months, entered into on September 14, 1908. It is an established fact in the case, and not disputed, that the building was entirely destroyed by fire; it being a considerable conflagration, which originated over a block away, and involved, it seems, a lumber yard near the property in question here, and extended through that property to this building. The business carried on in the defendant's property, which was insured here, had nothing to do with the conflagration. The decision here comes under the provision in the insurance policy which provides that:

"This entire policy, unless otherwise provided by agreement indorsed hereon or added hereto, shall be void * * * if the hazard be increased by any means within the control or knowledge of the insured."

It is claimed, on behalf of the insurance company, that this provision was violated by allowing this building to be occupied by the Cotton Products Company and by the business carried on by it therein, prior to and up to the date of the fire, not, as has been stated, that this in any way brought about the fire and the loss, but that there was a forfeiture of the policy, and the same became void, several months prior to the fire, by reason of the increase of the hazard.

[1] It is probably true from the evidence that the hazard was increased by the use to which this building was put by the Cotton Products Company. It seems that there was some machinery in it, and that cotton was what is called "reconditioned." While it is unnecessary to determine it here, in the view I take of this case, it may be fairly assumed, for the purpose of determining the question involved, that the hazard was increased, and if Thrower, the insured, had been responsible himself for this increased hazard, the policy would have been forfeited and rendered void at the time the building was devoted to the use indicated. The policy provides, however, that it shall be void if the hazard be increased "by any means within the control or knowledge of the insured." So that the question made here by counsel, and which clearly arises under the evidence, is whether Thrower had knowledge or control of the use to which this building was being put by the tenant.

M. L. Thrower, in his testimony before the court, made certain answers to questions put to him as follows:

"Q. The lease took effect on the 22d day of September, 1908, did it not? A. Yes, sir. Q. Did you lease it to anybody else after that, before the fire? A. No, sir. Q. Did you make any repairs or do any work on that building after you made this lease? A. None that I recall. Q. Didn't you put in an elevator? A. No; I think that was done about the time we leased it. Q. Wasn't it done at that time, in fact? A. I think so; there was one stipulation of the lease, when they leased it, they were to have an elevator. Q. What was the elevator put there for? A. To handle the goods, I guess. Q. Was there any

specific reason given or assigned why the elevator should be put there? A. None that I know of. Q. What? A. Only for ordinary purposes; he had to have it to run his business. Q. Do you recall any reason why the elevator should be put there? A. Not especially. Q. Do you remember about any reason having been assigned for putting the elevator there? A. No, sir; I do not. Q. You do not—did you have—

"The Court: An elevator to take the stuff from down in the stone part up on the other floor?

"The Witness: Yes, sir.

"Q. Were there any other tenants in this building between this time and the time of the fire? A. No; not that I know of. Q. Who did you deal with in regard to this property for the lease? A. I talked to Mr. Smith and Mr. Speer, who were then partners in it. Q. Who? A. Mr. Smith and Mr. Speer. Q. What building is your office in? A. Grant Building. Q. What building is the office of the Smith Cotton Products Company in? A. The same building. Q. What business do they conduct? A. They had a cotton business and fertilizer business. Q. What kind of a cotton business? A. Why, I never investigated that. Q. It says 'cotton products'; what do they mean by that? A. The handling of cotton. Q. What do they mean by 'cotton products?' A. I don't know, sir; I never saw their business; I never was out there in the building; I don't know what they were doing out there at all. Q. I am talking about what knowledge you had of the business they conducted—the character of the business they were conducting? A. I never investigated anything about Mr. Smith's business. Q. You knew he was in the cotton products business? A. I supposed he was by the lease."

He was again asked the further questions:

"Q. Did you know how they were using it at any time? A. No, sir; I didn't know there was a piece of machinery in there."

He was asked, then, this question, and made this answer:

"Q. Did you tell Mr. Brooks in that conversation, or in any conversation at any time, that you knew what they were using that building for, and the reason you did not tell the company was because you were afraid they would raise the rates on it? A. No, sir; I did not."

The above is the testimony, substantially, of Thrower on the subject of his knowledge as to the use to which this building was being put. It is positive, and is only questioned on account of the fact that he ought to have known, must have known, should have known, and some importance seems to be attached to the fact that Thrower and the tenant had their offices in the same office building in Atlanta. I think it must clearly be determined, from all the evidence taken together, that Thrower had no knowledge as to the particular use to which this building was being put by the tenant.

[2] It is urged here that he had control of the building. The language here is "any means within the control or knowledge of the insured." To control the matter it would seem to be necessary that Thrower should have had some knowledge of what was being done in this building. It does not seem to me that an owner can be held to the duty of controlling that of which he does not know.

[3] The rule of law is everywhere, and especially recognized by the Supreme Court of Georgia, that insurance contracts should be construed in such way, if possible, as to avoid forfeiture. In Clay v. Phœnix Insurance Co., 97 Ga. 44, 25 S. E. 417, the rule is stated in this way in the first headnote:

"Without sacrificing the substantial limitations imposed upon the liability of an insurer by the contract between the parties, stipulations and conditions in policies of insurance, like those in all other contracts, are to have a reasonable intendment, and are to be so construed, if possible, as to avoid forfeitures and to advance the beneficial purposes intended to be accomplished."

In Massachusetts Benefit Life Association v. Robinson, 104 Ga. 256, 30 S. E. 918, 42 L. R. A. 261, the second headnote states:

"If a policy of insurance is capable of being construed in two ways, that interpretation must be placed upon it which is most favorable to the insured."

The well-recognized rule of law in this state, and everywhere else, is that, if possible, forfeitures should be avoided. If it is held that there is no liability in this case by the insurance company to the insured, it must be upon the ground that the forfeiture resulted from the use to which this building was put, notwithstanding that use had nothing to do with causing the fire and the loss, and, if possible, that result should be avoided. So, in my opinion, the duty to control involved, reasonably and fairly, some knowledge of the hazardous use of the building; otherwise the forfeiture would be worked simply because Thrower was the owner of the building, and the people who caused the hazard were his tenants. The language of the policy would be given no effect, that the forfeiture should result from the increased hazard by means within the "control or knowledge" of the insured.

There is abundant authority for holding that, where there was language like this in the policy, the owner is not responsible for increase of the hazard by a tenant without the knowledge of the landlord. Beach on Insurance, vol. 2, § 712, discussing this question, says:

"The Supreme Court of Nebraska approved the following instructions in this branch of the case in the trial court, to wit: 'If you find from the evidence that an addition was placed on said building after the insurance was taken, but that the same was placed there without the knowledge or consent or by the authority of the [assured], and was built by the tenant without the consent, authority, or knowledge of the [assured], and that the fire did not originate in said addition, or in the building to which it was attached, then the building of such addition would not prevent the assured from recovering in this action.' The Supreme Court added, with reference to whether the acts of the tenant bound the assured: 'We believe the rule to be this: That when a tenant, without the knowledge or consent of the assured, erects an addition to the house covered by the policy, it does not void the policy unless it contains a stipulation to the effect that an increase of the risk by a tenant will render it null and void.' "

In a note a long list of cases are cited as supporting the text; one of these cases being Merrill v. Insurance Co. of North America (C. C.) 23 Fed. 245. In that case, which was by Judge Nelson, in the United States Circuit Court for the District of Minnesota, the headnote embodying what was decided on that subject is as follows:

"Where a fire insurance policy provides that any change increasing the hazard, either within the premises or adjacent thereto, within the control of or known to the assured, and not reported to the company and agreed to by indorsement thereon, will render the policy null and void, to defeat a recovery in action for loss, the company must affirmatively prove that changes made by a tenant, which increased the hazard, were made by the consent of the owner or his agent."

In 3 Joyce on Insurance, § 2222, this is said:

"When, however, the policy was conditioned to be void in case of any changes within the 'control or knowledge' of the insured, it was held that acts of tenants in violation of the conditions of the policy, and of which the insured had no knowledge, would not defeat a recovery on the policy."

It is this language, "within the control or knowledge of the insured," that differentiates policies like this from many policies as to which it has been held that the act of the tenant is the act of the landlord. In the second volume of Briefs on the Law of Insurance, by Cooley (page 1639), on the question here, this is said:

"The condition, whether specific or general, sometimes provides that the change must be one within the control or knowledge of the insured in order to forfeit the policy. Where this is the condition, the policy will not, of course, be forfeited, unless the change in use is within the knowledge or control of the insured."

In North British Mercantile Ins. Co., etc., v. Union Stockyards Co., 120 Ky. 465, 87 S. W. 285, on this question the opinion of the court says:

"In the policy being considered the stipulation is not in any sense a warranty; on the other hand, it admits, at least by implication, that extrahazardous use may be made of the insured building without the policy being affected, for it is provided that the policy will be voided only in the event the 'hazard be increased by means within the control or knowledge of the assured.' If the assured was ignorant of it, although it was a matter which he might have controlled, had he known of it, the policy is not affected; or, although he knew of it, yet if it was a thing beyond his control, neither is it affected. Such seems to us to be the reasonable construction of the language as setting forth the intention of the parties."

The particular expression important here being, if the assured was ignorant of it, although it was a matter which he might have controlled had he known of it, the policy is not affected.

In East Texas Fire Ins. Co. v. Kempner (1886) 12 Tex. Civ. App. 533, 541, 34 S. W. 393, 396, it was held as follows:

"It is insisted that the policy is void because the risk was increased. The policy provides that it shall be void if the risk be increased by any change in the occupation of the building or premises, or by the erection of occupation of adjacent buildings, or by any means whatever within the knowledge of the assured. The evidence shows that Kempner, the assured, did not have any knowledge of the change in occupancy, or of any use or act that would increase the risk. His want of knowledge of the use of the gasoline stove, in our opinion, by the terms of the policy, settled this question against the appellant."

Other authorities might be cited to the same effect, but the above are believed to be enough for present purposes. There are other authorities, undoubtedly, which take different views in different ways of the question involved here; but I am satisfied that the great weight of authority is in line with the cases cited and quoted from above, and that Mr. Thrower is entitled to have this policy recognized as valid and binding as against the insurance company, under the facts shown here, on the ground, particularly, that he had no knowledge of the extra hazard, if there was such extra hazard, connected with the use to which the building was put.

The right to have this policy enforced is really interposed as a defensive plea to the foreclosure proceeding, but the question, after all, is as to the validity of the policy, and whether it was forfeited or not, as has been stated. The result of the foregoing is that the defendant, Thrower, is entitled to a decree allowing his claim under the insurance policy for the entire amount of the loss sustained set off against the claim of the insurance company under the mortgage.

[4] I think, however, that there should be deducted from the claim on the policy the amount of additional premiums which would have been required at the rate named in the evidence for the business that was actually carried on there. What this would be counsel can readily ascertain, and the respective amounts due on the insurance policy and the mortgage adjusted.