# HENRY SCHAFFER v. HAMPTON FARMERS MUTUAL FIRE INSURANCE COMPANY.[1]

No. 28,278.

March 20, 1931.

*D. L. Grannis,* for appellant.
*Albert Schaller* and *Kueffner & Marks,* for respondent.

[1]Reported in 235 N. W. 618, 236 N. W. 327.

HOLT, J.

Plaintiff had a verdict in a suit upon two fire insurance policies issued by defendant covering two barns, shed, and silos on his farm which were damaged or destroyed in a fire occurring on the evening of December 17, 1928. A motion for judgment non obstante or a new trial was denied, and defendant appeals.

Of the two barns destroyed the smaller was the westerly, in which the fire started. The evidence is conclusive that at the time of the fire distillation of alcohol was carried on in the smaller barn. A great number of neighboring farmers called to help extinguish the fire testified to seeing stoves on the floor of the barn with coal fires burning, a 12-burner gasolene stove with tubing attached, 50 to 75 barrels of mash, tanks and pressure tanks containing fermenting corn, a great many jugs, the corks of which, as the heat became intense, popped out and the contents burned with a flame characteristic of burning alcohol. The testimony is uncontradicted that the sons of the tenant living on the farm, at four o'clock in the morning of the next day, procured a truck owner to come there and with their aid haul away three loads of the material which evidenced the illicit business, such as the remnants of the jugs, barrels, stoves, and tanks, dumping them at two different places quite distant from the farm. No effort was made to clear up the debris in the large barn. One of the defenses pleaded was a violation of this provision of the policy:

"And it is further agreed that if the risk be increased by any alteration of the building or other property, or by the erection of or occupation of neighboring buildings, or by any means whatever within the control of the assured, without the consent of this company, or if the assured has made any false representations respecting the value or consideration of the property, or his interest in it; then, and in every such case, the policy shall be void."

It is apparent that two questions are involved: (1) Was the risk increased by the installation and operation of the apparatus for distilling alcohol; (2) if increased, was it within the control of the plaintiff?

The first question was submitted to the jury as the only issue in the case, the charge being that if they found that the installation and operation of the distilling apparatus increased the fire risk it avoided the policy and entitled defendant to a verdict. Defendant contends that as a matter of law the risk was increased. Ordinarily the question is for a jury. But the evidence here is uncontradicted that an illicit distillery was carried on in the westerly barn. Placing and using coal and gasolene stoves for heating and boiling in the ordinary farm barn not equipped with brick chimneys nor built or arranged for the purpose of making it safe to keep or maintain fires therein so obviously increases fire hazard that a jury should not be allowed to find to the contrary. In and between barns, as found on the ordinary farm, are hay, cornstalks, straw, and other readily inflammable rubbish, and fires in any kind of stove or heating apparatus in proximity thereto must be regarded by every reasonable person as increasing the fire risk.

We are compelled to hold that the installation and operation of a still in a farm barn not located or constructed with a view safely to carry on such business exposes the premises insured to increased risk from fire. But although we conclude that the issue submitted to the jury and found in plaintiff's favor should have been resolved in favor of defendant by the trial court, defendant is not entitled to judgment notwithstanding the verdict, because we are of the opinion that there was error in ruling that the consequence of the tenant's increase of the fire risk under this policy must necessarily fall upon plaintiff, the landlord; and that brings us to the second question.

For three years preceding the fire plaintiff had leased the farm under a so-called cropping contract or lease, the first year of the three being under a written agreement between plaintiff and William Weiler. Thereafter the lease was oral and between plaintiff and the wife of William Weiler. Plaintiff resided in St. Paul after his farm was leased. The parties agree that the terms of the oral leases were supposed to be the same as the prior written one. No great importance should be given to the form or terms of the lease or contract under which Mrs. Weiler and her family were in posses-

sion. It is plain that plaintiff had relinquished the entire possession to them. He reserved only a right of entry for certain, not here important, specified purposes.

It is common knowledge that in every community where the pioneer farmers themselves have grown too old to carry on their farms many are let to tenants and the owners move into some city or village to live during their declining years. No doubt those so doing seek to keep the same protection of the buildings on the farms against loss from fire that they did when living on the farm, and it may be assumed that insurance companies are willing for a premium to furnish such protection. There is nothing in defendant's policy or by-laws against insurance if the buildings insured are occupied by others than plaintiff. From the provision in the policy above quoted, if the risk be increased by any alteration of the building or other property or by the erection of or occupation of neighboring buildings, the insurance is forfeited, and that without regard to whether it was or was not within the control of the insured. And in either of those two named instances the plaintiff would have to take the consequences of Mrs. Weiler's or a third party's acts if there had been an alteration of the buildings insured or in the neighboring buildings. The same would be the case had the policy provided that it should become void if the insured buildings were used for illicit distilling, or for an unlawful purpose, or for a purpose that increased the risk. 3 Cooley, Briefs on Insurance (2 ed.) p. 2535, states the principle in this language:

"Where the condition is specific, and is not qualified as to the control of the insured, the fact that the change is made by a tenant of the insured will not relieve him from the forfeiture." Allen v. Home Ins. Co. 133 Cal. 29, 65 P. 138; Howell v. Baltimore Eq. Society, 16 Md. 377; Kelly v. Worcester M. F. Ins. Co. 97 Mass. 284; Long v. Beeber, 106 Pa. 466, 51 Am. R. 532; Liverpool & London Ins. Co. v. Gunther, 116 U. S. 113, 6 S. Ct. 306, 29 L. ed. 575.

Mr. Cooley, on p. 2534, also states:

"The condition, whether specific or general, sometimes provides that the change must be one within the control or knowledge of the

insured in order to forfeit the policy. Where this is the condition, the policy will not, of course, be forfeited, unless the change in use is within the knowledge or control of the insured."

The third or remaining condition above quoted avoiding the policy is when the risk is increased "by any means in the control or knowledge of insured."

In Merrill v. Insurance Co. of N. A. (C. C.) 23 F. 245, Judge Nelson held a lessor's insurance not forfeited by a tenant's change of which the former had no knowledge, the condition reading:

"Any change increasing the hazard, either within the premises or adjacent thereto, within the control of or known to the assured and not reported to this company, and agreed to by indorsement thereon, will render this policy null and void."

North British Merc. Ins. Co. v. Union Stockyards Co. 120 Ky. 465, 87 S. W. 285, 287, is a case much in point except that the condition read that the policy would become void if the hazard was increased by means "within the control or knowledge of the assured." In the instant case the word "knowledge" in the disjunctive is not used. But the Kentucky court said [120 Ky. 475]:

"If the assured was ignorant of it, although it was a matter which he might have controlled had he known it, the policy is not affected. Or, although he knew of it, yet if it was a thing beyond his control, neither is it affected. Such seems to us to be the reasonable construction of the language as setting forth the intention of the parties."

In Royal Exch. Assur. of London v. Thrower (C. C. A.) 246 F. 768, 770, the policy stipulated it should "be void * * * if the hazard be increased by any means within the control or knowledge of the insured." The proof did not show that the insured, the lessor, had knowledge of the alleged increased risk, and a recovery allowed by the district court was sustained, the court remarking [246 F. 772]:

"A matter beyond one's knowledge is rarely within his control."

The district judge (240 F. 811, 814) used much the same language, saying:

. "To control the matter it would seem to be necessary that Thrower should have had some knowledge of what was being done in this building. It does not seem to me that an owner can be held to the duty of controlling that of which he does not know."

Other cases indicating that under similar stipulations there is no forfeiture of the insurance unless the increased hazard is proved to be within the knowledge and control of the insured are: East Texas F. Ins. Co. v. Kampner, 12 Tex. Civ. App. 533, 34 S. W. 393; Northern Assur. Co. v. Crawford, 24 Tex. Civ. App. 574, 59 S. W. 916; National Union F. Ins. Co. v. Richards (Tex. Civ. App.) 290 S. W. 912; Waggonick v. Westchester F. Ins. Co. 34 Ill. App. 629, where the words were "within the knowledge of the assured;" Nebraska & Iowa Ins. Co. v. Christiensen, 29 Neb. 572, 45 N. W. 924, 26 A. S. R. 407; London and W. Tr. Co. v. Canada F. Ins. Co. 13 Ont. L. Rep. 540.

A condition as near like the one before us as two cases can well be is Bitonti v. National Liberty Ins. Co. 96 Pa. Super. Ct. 521, 524. The policy provided that the insurer was not liable for damages occurring to the property if "the hazard is increased by any means within the control of the insured." The tenant of the insured installed a still without the knowledge of the insured. A recovery was affirmed. Central Abbatoir Co. Inc. v. London & Scottish Assur. Corp. 91 Pa. Super. Ct. 327. Had the insurer intended to forfeit the policy, regardless of whose acts increased the fire hazard, we would expect the stipulation to read: This policy shall be void if the risk is increased by any means whatever within the control of the occupant.

We are of the opinion that as the pleadings stood it was necessary for defendant, in order to claim a forfeiture of the insurance, to prove that the insured had knowledge of the use of the barn for a distillery. If he had, then its existence there could be said to be within his control. No lessee could claim the right to carry on an illegal business on the premises leased or to use any building

thereon so as to increase the fire hazard. But on this issue evidence was excluded, and the court held as a matter of law that plaintiff had to bear the consequences of whatever the tenant or the persons occupying the farm did, even though he had no notice or knowledge thereof and hence not within his control.

Defendant is not entitled to judgment non obstante but is entitled to a new trial.

AFTER REARGUMENT.

On April 24, 1931, the following opinion was filed:

HOLT, J.

Defendant pleaded as a defense that "plaintiff, without any knowledge or consent upon the part of said defendant, increased the risk in said policy by consenting to an alteration of said barns and allowed and permitted the use of said barns for purposes not contemplated by said policy, * * * and because of said alterations and the use of said barns for purposes which increased the risk of said insurance, said policy was void."

The issuance of the policies, the fire, and the loss in the amount sued for was admitted. The terms of the policy upon which the defense is based are set out in the opinion filed. The trial court took the view that the only issue for the jury was whether the operation of a still in the barn increased the risk, and held as a matter of law that such operation was within plaintiff's control since he was responsible for whatever his tenant or cropper to whom he had given possession did on the premises. Defendant proved conclusively that a still was operated in the smaller barn, and we held and still hold that such operation as a matter of law increased the risk from fire. Defendant also proved that Mrs. Weiler was plaintiff's tenant or cropper in possession of the premises destroyed.

When the testimony closed each party moved for a directed verdict. Each motion was denied. If plaintiff was then, upon the evidence properly received, entitled to a directed verdict, the verdict rendered to the same effect should stand no matter how arrived at. But we think plaintiff was not entitled to a directed verdict. As

the evidence then stood the risk had been increased by the installation of a distillery in the barn. Plaintiff's tenant or cropper was in possession of the premises. It appeared that plaintiff visited the farm and was in the smaller barn about two months before the fire. Upon this evidence it could not be ruled as a matter of law that an enterprise so extensive as this was shown to be was installed in the barn without plaintiff's knowledge and hence was beyond his control. It is true that the burden was on defendant to prove the increased risk to be within plaintiff's control; but the inference from the facts proved was for the jury. The fact that the court erroneously ruled that plaintiff was responsible for the tenant's acts and erroneously excluded evidence of plaintiff's want of knowledge of the increased risk does not do away with the evidence which was received, from which a jury might have inferred that the rather extensive use of the smaller barn for a distillery was with the knowledge and consent of plaintiff.

We are of opinion that the single fact issue in the case has not so far been tried to the jury, viz. was the increased risk created by the operation of a still in the barn within the control of plaintiff? And, as stated in the opinion, that necessarily depended on plaintiff's knowledge of such operation, for if he knew thereof as owner or landlord he could rightfully control its existence by causing to be removed from the insured premises that which increases the fire hazard and voids his insurance.

There being but the one fact issue to be tried, the cause is remanded with direction that the new trial ordered be limited to the issue named. In other respects the former opinion is adhered to.