L. N. Whitlach, *Admr. v.* Mutual Fire Insurance Company of West Virginia

(No. 7027)

Submitted October 6, 1931.   Decided October 13, 1931.

*Steptoe & Johnson, James M. Guiher* and *Norman S. Elliott,* for plaintiff in error.

*Frank C. Haymond,* for defendant in error.

Hatcher, Judge:

This is an action to recover insurance on a barn and farming implements destroyed by fire.   The insurance company denied liability on the ground that the assured had violated certain warranties in the policy.   The plaintiff obtained a judgment for $1,000 and the defendant secured a writ of error.

The following facts were established at the trial:   Tom Slat held a three year policy issued May 26, 1926, by defendant which covered the loss.   About 7 a. m. Sunday, January 22, 1928, the attention of his family and close neighbors was attracted to the barn by an explosion followed by a fire (which destroyed it.)   Hurrying to the fire they found his dead body in a covert chamber adjoining a foundation wall of the barn. This compartment was approximately 20 x 10 x 6, and contained one entrance (only), through a trap door, two to three

feet square in the wall of the barn. The floor, walls and ceiling of the room were constructed of concrete; the walls and ceiling were six inches thick (some witnesses said more) and the ceiling was reinforced with steel rails and cables. There was a pig pen above the structure. The explosion bust open the ceiling of the room and set fire to the pen and the barn. The compartment contained (a) a water line, (b) a gas line with an open burner, and a connection to which was attached a rubber hose about four feet long, (c) a gas hot plate made of 3/4 inch piping ("run backward and forward" four or five times, into which holes had been drilled to permit the escape of gas), (d) a 20 gallon keg with a small round hole in the side near the bottom, and (e) a wooden tank with a capacity of four to five hundred gallons, which contained a mixture of cracked corn and water. Several members of Slat's family were witnesses and they denied any knowledge of the compartment. It was unknown to all his neighbors who testified, except one, who helped Slat construct part of it about 1920.

The warranties in the policy which the defendant claims were violated are as follows:

"The entire policy, unless otherwise provided by agreement endorsed hereon or added hereto shall be void * * * if the hazard be increased by any means within the control or knowledge of the insured. * * *

The use of fire head in any barn, * * * or other out-buildings insured or containing property insured by this policy, or exposing property insured hereby, without written permission hereon, renders this entire policy void."

The plaintiff contends that the gas was used in the secret room for fuel and light and such use was permissible, under the following permit in writing attached to the policy:

"Permission is hereby granted for the use of Natural Gas for fuel and light, subject to the following conditions: This Company will not be liable for damages by explosion of Natural Gas on the premises unless fire ensues, and then for damages by fire only. CAUTION: The heat from Natural Gas being more intense than that derived from wood or coal, property

owners should see to it that all stoves have under and around them the proper zinc or other metal protection, and stovepipe provided with dampers to prevent overheating pipes and flues. On all stove attachments the stopcock should have a shield to indicate when open or closed, and a loose key to be hung up out of reach of children. BEWARE OF LEAKS IN PIPES.''

The defendant replies that the use of gas allowed by the permit was use in the ''accustomed manner'' with the usual safeguards and not a use which is extraordinary, citing *Ins. Co.* v. *Gunther*, 116 U. S. 113, 130-1; and defendant contends that the character of the articles found in the room in connection with its inaccessibility and its secrecy, demonstrate that Slat was using it to manufacture moonshine liquor. The plaintiff answers that the contention fails because no boiler and coil were found, both of which are necessary in such an operation.

The facts that the room had no ventilation, and that gas was being conducted through the rubber hose (with its natural tendency to leakage) show a use which was unusual and not contemplated by the insurer in granting the gas permit. Even if we close our eyes to the obvious inference to be drawn from the character of the articles in the room, we must nevertheless hold as a matter of law, that use of gas under such extraordinary conditions increased the hazard assumed by the insurer, no matter what purpose Slat made of the room; and that an instruction to find for defendant (requested) should have been given. See generally *Appleby* v. *Ins. Co.*, 54 N. Y. 253; *Schaffer* v. *Ins. Co.*, (Minn.) 235 N. W. 618. This determination renders a discussion of other points of error unnecessary.

The judgment of the lower court is reversed, the verdict of the jury set aside, and the case remanded.

*Reversed and remanded.*