## MERRILL *v.* INSURANCE CO. OF NORTH AMERICA.[1]

*(Circuit Court, D. Minnesota.* March, 1885.)

**1. FIRE INSURANCE—INCREASE OF HAZARD—TENANT MAKING ALTERATIONS.**

Where a fire insurance policy provides that any change increasing the hazard, either within the premises or adjacent thereto, within the control of or known to the assured, and not reported to the company and agreed to by indorsement thereon, will render the policy null and void, to defeat a recovery in action for loss, the company must affirmatively prove that changes made by a tenant, which increased the hazard, were made by the consent of the owner or his agent.

**2. SAME—PROOFS OF LOSS—FALSE STATEMENTS.**

A false statement in the proofs of loss, to defeat a recovery, must be false to the knowledge of the assured, and made for the purpose of defrauding the company.

At Law.

*Secombe & Sutherland,* for plaintiff.

*W. D. Cornish,* for defendant.

NELSON, J. This suit is brought to recover on a fire insurance policy. A jury is waived. Plaintiff introduced in evidence the policy, offered proof of the fire and value of the property, and introduced proofs of loss, and is entitled to a judgment unless the defendant sustains one or more of the defenses urged, which are, (1) that there was a change of risk, which rendered the policy void; (2) fraud in proofs of loss. The policy contained these conditions and stipulations:

"Any change increasing the hazard, either within the premises or adjacent thereto, within the control of or known to the assured and not reported to this company, and agreed to by indorsement thereon, will render this policy null and void. An attempt to defraud the company in the matter of a claim for loss, by false swearing or otherwise, shall cause a forfeiture of this policy, and all claim for loss thereunder."

The stipulation in reference to change of risk must be kept in good faith by the assured, and information of any change in the hazard, and thereby increasing the rate of premium, must be agreed to by the insurer. However, any change increasing the hazard, and rendering the policy void, must be by the act, authority, consent, or cognizance of the assured, or by the consent of her agent.

The building insured was built of stone, with frame office in the .rear, and located in the city of Minneapolis, and described in the policy as a store-house. It was insured for one year from June 19, 1883, and burned February 13, 1884.

The principal testimony relied upon by defendant to defeat a recovery is that of Stevens, the tenant, and Trumbell, the defendant's agent; and it is also urged that the evidence of Merrill, the agent of the assured, indicates that he was aware of the improvements which were made. The changes and alterations in the building, and adja-

[1] Reported by Robertson Howard, Esq., of the St. Paul bar.

cent thereto, undoubtedly increased the risk, and would render the policy void if known to the agent, Merrill; for no information of them was furnished the company, and its assent thereto was not obtained. It is in proof that they were commenced during the last of December, 1883, by Stevens, the tenant. He had temporarily leased the building in the fall of 1882, and on June 19, 1883, had made a definite arrangement for continuing his lease for a year, at which time the insurance policy was written. The property was owned by the plaintiff, who lived in Boston, Massachusetts, and was in charge of the agent, D. B. Merrill, who lived in St. Paul, Minnesota.

The agent visited the tenant, Stevens, in December, 1883, or January, 1884, and had a conversation with him, and the effect of it was, as Stevens testifies, that he was about to make changes, and wanted Merrill, before he went south, to come down and see him. Stevens wished to get a lease of the building or an understanding about it, and that was the reason given why he wished Merrill to come down before he went south. He is not certain that it was in a conversation or on a postal card sent to St. Paul that this request was made; but he does testify that Merrill came to Minneapolis, and a conversation took place in front of the building, in which Stevens stated that he was making changes which he considered improvements, and wanted Merrill to lease him the building for another year at $30 per month, —the same rent as the previous year,—in consideration of his fixing it up and putting the improvements on it. The improvements talked about "were putting on a shed at the rear,—a roofed shed,—and putting on a new front, and fixing up the windows, and making general improvements." The changes thus indicated would not necessarily increase the risk, and Stevens is careful to say in his testimony that he don't recollect whether he spoke definitely about occupying it for any other purpose than he had previously, which was for storage. He never saw Merrill again until after the fire. Some correspondence between the parties is introduced in evidence, but there is nothing in it indicating that Merrill knew of or consented to the changes which were made. He went south soon after.

The conversation in December or January was brief. They were together only about 10 or 15 minutes, and did not go into the building; and at that time the office had been moved up from the rear of the stone building to the front, but it does not appear that such change increased the risk, and upon the shed in the rear only the roof had been put on. It does not appear that this was visible to Merrill, or that he knew that it was being built, and Stevens said nothing about it. Merrill denies knowledge of the changes made, except the moving of the office and putting in the window, and that is about all Stevens' testimony shows he had knowledge of. Trumbell, the company's agent, fails to show that Merrill knew about the change made by the tenant. It is claimed that Merrill, after the fire, in conversation with Trumbell, admitted that he knew that Stevens was going to

make changes, and only refused to allow a reduction of rent in consideration of any alterations made; but he does not admit he knew the character of the changes, and Trumbell is particularly careful to testify that Merrill, the agent, never said that Stevens informed him that he was going to make the changes which he finally did. Stevens had indicated to Merrill what changes he would like to make, which would not necessarily increase the hazard, and are not shown to be of that character. He specified the kind of alterations he was about to make, and, though he spoke of general improvements, it was in connection with the others mentioned. The owner of the building is not liable for the acts of the tenant which would forfeit this policy, unless he has assented thereto.

The tenant could make general changes and repairs, or improvements which did not enhance the risk; and in order to defeat a recovery the defendant must affirmatively prove that these changes, which the evidence shows did increase the hazard, were made by the consent of the owner, or his agent, Merrill. I think the testimony fails to prove this; for if it is conceded that he knew that general improvements were to be made, the rule invoked by counsel, that a general assent to make improvements implies authority to make such as would increase the hazard, does not apply. The defendant, to sustain this defense, must show that Merrill knew the character of the improvements; for it is only "changes increasing the hazard" that must be reported and agreed to.

2. Did the plaintiff make out and swear fraudulent proof of loss? It is urged that in the proofs of loss, the assured should have stated that the tenant had made alterations, increasing the hazard, without her knowledge, and given the situation and position of the property at the time of the loss, and in not doing so she committed a fraud which defeats a recovery. There is no evidence that the assured knew anything about the alterations. She lives in Boston, Massachusetts, and managed the property through an agent. And although she made the proofs of loss, the company do not object on that account. Unless the assured had personal knowledge of the change of risk, and made the proofs of loss for the purpose of defrauding the company, knowing their falsity, there is no fraud. The proofs must comply with the contract obligations of the assured, and fairly state the situation of the property at the time of the loss, within her knowledge; and in so stating, the policy does not require that facts communicated by some one else, about the situation of the property at the time of loss not within her knowledge, should be set forth. A false statement, to defeat a recovery, must be false to the knowledge of the assured, and made for the purpose of defrauding the company. This defense is not sustained by the evidence.

The plaintiff is entitled to judgment for the sum of $1,578.75; and it is so ordered.