F. T. MEHARRY v. JOHN HALLIGAN.

[FILED MAY 13, 1890.]

1. **Chattel Mortgages: OWNERSHIP: EVIDENCE.** One A, a former resident of Illinois, removed to P. county, in this state, in March, 1887, bringing certain personal property with him. A few days afterwards one B, a resident of Illinois, who claimed to be the owner of the property in question, by means of a requisition caused the arrest of A, and then sold the property in dispute to C. & C. for the sum of $550, of which sum $50 was paid in cash and promissory notes secured by a chattel mortgage given for the remainder. On the trial of A on the criminal charge he was acquitted. He thereupon brought an action of replevin against C. & C. and recovered possession of the property. C thereupon sold the notes of C. & C. to E., who, upon their failure to pay the notes, brought an action of replevin under the chattel mortgage against A. *Held,* That the validity of the mortgage depended on the question whether or not B was the owner of the property at the time he sold the same to C. & C., and as the testimony on that point was nearly equally balanced, the verdict in favor of A would not be set aside.

2. **Evidence.** Certain testimony objected to, *held,* to have been immaterial.

3. **Damages** *held* to be excessive and leave given to remit.

ERROR to the district court for Pierce county. Tried below before NORRIS, J.

*Wigton & Whitham,* for plaintiff in error.

*W. W. Quivey,* and *Holmes & Hays, contra.*

MAXWELL, J.

This is an action of replevin brought by the plaintiff against the defendant, and on the trial of the cause the jury found the right of property and right of possession in the defendant, and that the value of the property was $500

and the amount of damages $500. Afterwards the defendant remitted $300 of the damages and the sum of $100 from the value of the property, and thereupon the court overruled the motion for a new trial and entered judgment on the verdict.

The principal objection in this court is that the verdict is against the weight of evidence.

The testimony tends to show that the defendant and one John A. Montelius, for some time prior to 1887, were residents of Ford county, Illinois, and had dealings with each other; that in February, 1887, they had a settlement, as follows:

"Due J. A. Montelius on account of stock, farm machinery, etc., upon which amount I agree to pay eight per cent interest until paid, and stock to remain the property of J. A. Montelius until paid for, the amount of seven hundred and sixteen $\frac{59}{100}$ dollars.

"JOHN HALLIGAN.

"Piper City, Ill., Feb'y 9, 1887."

The defendant claims that he afterwards paid Montelius nearly all of this debt, which is denied by the latter.

In March, 1887, the defendant removed to Pierce county, in this state, bringing the property, on which Montelius claimed to have a lien, with him. Montelius thereupon instituted criminal proceedings against the defendant in Illinois for larceny as a bailee, and a requisition seems to have been issued and the defendant taken to Illinois, where, on the trial, we are led to infer he was acquitted. The testimony as to the criminal proceedings is quite meager, and not very satisfactory. Upon the arrest of the defendant, Montelius, who had followed the defendant, sold the property, on which he claimed to have a lien, or of which he claimed to be the owner, to George McCrady and James McCrady for the sum of $550, of which sum $50 was paid in cash, and two notes, each for the sum of $250, secured by a chattel mortgage on the property, were given

by them to Montelius. One of these notes was due January 1, 1888, and the other January 1, 1889. The defendant seems to have been a brother-in-law of the McCradys.

Upon the acquittal of the defendant he returned to this state and instituted an action of replevin against the Mc-Cradys and recovered the possession of the property. Montelius seems to have had notice of this suit.

On the 28th of December, 1887, Montelius, through his attorneys, Cook and Moffit, sold the notes in question to the plaintiff for the sum of $360. He seems to have relied on the assurances of one of Montelius's attorneys, in substance, that the two notes were good and the security sufficient. The plaintiff, so far as appears, acted in good faith, unless the price of the notes was notice, and is entitled to protection so far as the courts can protect him.

The question in the case at bar, however, is not the good faith or the want of it of the plaintiff, but whether or not Montelius was possessed of the legal title of the property in dispute at the time he sold the same to the McCradys.

This action is based on the mortgage executed by the McCradys to Montelius, and that depends for its validity upon the right of Montelius to sell the property to them, because if he was not possessed of the legal title to the property at that time, he was unable to pass such title by a sale and the mortgage would be void. Upon this point the testimony is so conflicting and so nearly equally balanced that it would be impossible for a court to interfere had the finding been either against or for the defendant. The verdict, therefore, is not clearly wrong and will not be set aside.

Objections are made to certain questions in regard to the criminal prosecution which it is claimed excited the prejudices of the jury in favor of the defendant; but testimony of like character was given without objection by Montelius and one of the attorneys of Montelius. Indeed, the attorney testifies that he was prosecuting attorney.

Q. What property is referred to in this paper, Exhibit A, referred to as stock, farm machinery, etc?

A. The property taken by John Halligan, defendant in this suit, from this county to Nebraska. He was indicted for stealing this property.

Q. What, if anything, did John Halligan say about the ownership of this property, referred to in Exhibit A, to John A. Montelius, and what justification did he set up or claim for taking the property to Nebraska.

A. At the trial of the indictment against him here he was sworn as a witness and testified in his own behalf. He did not deny but that Montelius owned the property, but claimed that he had a right to the possession until Montelius reclaimed it. He swore that he had no intention to steal the property and that he had a right to change its location as he might desire. He also swore that some of this property had been bought by Montelius at a sale under an execution against him and that some of the property had been placed by Montelius on the farm occupied by him in this county. He claimed that he had the right to buy the property at any time, by paying the amount named in this paper.

This testimony was introduced on behalf of the plaintiff and the questions objected to could not, in connection with such testimony, have been prejudicial.

The award of damages, however, is excessive, and the defendant will have leave to remit, therefore, all damages except the sum of five cents, and on condition that such remittitur is entered within thirty days the judgment is affirmed; otherwise, the judgment will be reversed and the cause remanded.

JUDGMENT ACCORDINGLY.

THE other judges concur.