NEBRASKA & IOWA INS. CO. v. JAMES CHRISTIENSEN.

[FILED MAY 13, 1890.]

1. **Insurance**: CONDITIONS: WAIVER: A clause in a policy of fire insurance providing that "the company shall not be liable by virtue of this policy, or any renewal thereof, until the premium therefor shall be actually paid" may be waived by the company.

2. ———: LEASED PREMISES: INCREASE OF RISK BY TENANT. When a tenant, without the knowledge or consent of the assured, erects an addition to the building insured, such change does not avoid the policy, although it contains a provision that it shall be void and of no effect if the risk be increased by any means within the control or knowledge of the assured.

3. ———: ———: UNLAWFUL USE. The building insured was described in the policy as being occupied as a saloon. It was so occupied by a tenant at the time of the fire, as well as when the policy was issued. The fact that at the time of the loss the building was also used by the tenant for the purpose of prostitution does not invalidate the policy, when it appears that the premises were used for such illegal purposes without the knowledge or consent of the owner, and that the loss did not occur from such use.

ERROR to the district court for Douglas county. Tried below before GROFF, J.

*Scott & Scott*, for plaintiff in error, cited, as to increase of risk and knowledge of owner: *Houghton v. Ins. Co.*, 8 Met. [Mass.], 114; *Kelley v. Ins. Co.*, 97 Mass., 286;

*Lee v. Ins. Co.*, 3 Gray [Mass.], 592 ; May, Ins., sec. 237 ; *Diehl v. Ins. Co.*, 58 Pa. St., 413 ; *Fire Assoc. v. Williamson*, 26 Id., 196 ; *Long v. Beeker*, 106 Id., 466 ; *F. & M. Ins. Co. v. Simmons*, 30 Pa. St., 299 ; *Duncan v. Ins. Co.*, 6 Wend. [N. Y.], 489 ; *Appleby v. Ins. Co.*, 45 Barb. [N. Y.], 454 ; *Williams v. Ins. Co.*, 57 N. Y., 274, and cases ; *Heneker v. Ins. Co.*, 14 U. C. C. P., 57 ; *Harvey v. Ins. Co.*, 11 Id., 394 ; 1 Wood, Fire Ins., sec. 254, and cases cited ; *Indiana Ins. Co. v. Brehm*, 88 Ind., 578 ; *C. R. Ins. Co. v. Shrimp*, 16 Ill. App., 248.

*Charles B. Keller, contra*, cited, on same point : *N. E., etc., Ins. Co. v. Wetmore*, 32 Ill., 245, and cases ; *U. S., etc., Co. v. Kimberly*, 34 Md., 234 ; *Schmidt v. Ins. Co.*, 41 Ill., 295 ; *Merrill v. Ins. Co.*, 23 Fed. Rep., 245 ; *Stanford v. Ins. Co.*, 12 Cush. [Mass.], 541 ; *White v. Ins. Co.*, 8 Gray [Mass.], 566 ; *Boardman v. Ins. Co.*, 8 Cush. [Mass.], 583 ; *Heneker v. Assur. Co.*, 14 U. C. C. P., 57 ; *Franklin Ins. Co. v. Gruver*, 100 Pa. St., 266 ; *Newman v. Ins. Co.*, 17 Minn., 98 ; *Jefferson Ins. Co. v. Cotheal*, 7 Wend. [N. Y.], 72 ; *Newhall v. Ins. Co.*, 52 Me., 180 ; *Hall v. Ins. Co.*, 6 Gray [Mass.], 185 ; *Loehner v. Ins. Co.*, 17 Mo., 247 ; *Lyon v. Ins. Co.*, 2 Rob. [La.], 247 ; *Rafferty v. Ins. Co.*, 3 Harr. [N. J.], 480.

NORVAL, J.

This suit is upon a policy of insurance. The answer upon which the case was tried in the lower court admits that the defendant is a corporation, that it issued the policy declared upon by the plaintiff, and denies all the other allegations of the petition. The answer also pleads a breach by the assured of the following conditions of the policy :

"1. The company shall not be liable by virtue of this policy, or any renewal thereof, until the premium therefor shall be actually paid.

"2. In case the building, whether intended for occupancy by owner or tenant, be or becomes vacant or unoccupied, or cease to be operated or used for the purpose stated in this policy, unless permission therefor be indorsed in writing, then and from thenceforth so long as the same shall be unoccupied or cease to be operated, this policy shall cease and be of no force or effect.

"3. This policy shall be void and of no effect if, without permission therefor in writing hereon, any change take place in title, ownership, or possession (except by succession consequent upon the death of assured).

"4. This policy shall be void and of no effect if, without permission therefor in writing hereon, the risk be increased by any means within the control or knowledge of the assured."

The reply denies a breach of any of the conditions of the policy and alleges in substance : That prior to the issuing of the policy sued on the defendant had issued other policies to the plaintiff, for which the defendant had been in the habit of receiving premiums from time to time as suited the convenience of the plaintiff; that it was the custom of the defendant to issue policies to insurers in said company without requiring the payment of the premiums at the time; that when the policy was issued the defendant agreed that the premium might be paid at such reasonable time thereafter as might suit the convenience of the plaintiff; that thereafter, on the 8th day of July, 1885, the plaintiff paid to the defendant $9, part of said premium, and that the defendant at that time agreed to accept the balance at any time it should be convenient for the plaintiff to pay the same; that before the commencement of the suit he tendered to the company the balance of said premium, which it declined to accept; that the portion of the premium paid by the plaintiff was greater than the proportion of the time for which the premises had been insured under said policy before the destruction of the building by fire.

The cause was tried to a jury, and a verdict was returned for $587.17, being the full amount of the policy, with interest, less the unpaid premium.  Numerous errors are assigned in the petition in error on the rulings of the trial court on the introduction of testimony, but, as they are not relied upon in the plaintiff in error's brief, they will not be considered here.  The errors complained of consist in giving and refusing of instructions, and refusal to submit to the jury special interrogatories requested by the company.

The policy, which is the basis of the suit, was issued and delivered to the defendant on the 30th day of May, 1885, for the amount of $500 upon assured "one story house, frame, shingle roof, building occupied as saloon, situated on lot 12, block 77, South Omaha Stock Yards," and to run one year from May 28, 1885.  The amount of premium agreed upon was $12.50.  No part of it was paid when the policy was delivered, but a credit therefor was extended until such time as it should be convenient for the assured to pay the same, and that it was the custom of the company to extend credit for premiums and to send its collectors to collect the same; but that was not done in this case.  On July 8, 1885, the assured called upon the plaintiff and paid $9 of the premium, and it was then agreed that the balance should be paid when it suited the convenience of the insured.  The building was entirely destroyed by fire November 29, 1885, and at that time it exceeded in value the amount for which it was insured.  Proof of loss was made by the plaintiff in accordance with the terms of the policy.  When the fire occurred $3.50 of the premium remained unpaid, but after the loss it was tendered, which the company declined to accept.  At the time the policy was issued the building was occupied as a saloon by Dug. Johnston, a tenant.  Johnston, at his own expense, without the knowledge or consent of the plaintiff, in August or September, 1885, built an addition to the building, which

addition, without plaintiff's knowledge or consent, was used for the purpose of prostitution. There is evidence tending to show that it was not used for that purpose at the time of the fire, nor during two or three weeks prior to the loss. The fire originated in a hotel building standing a short distance from the saloon, from which the fire was carried to the saloon, the addition being the last to catch fire and burn.

On the question of the waiver of the conditions of the policy, the court at the request of the plaintiff instructed the jury as follows:

"1. You are instructed that any condition or provision in a policy of insurance which avoids the policy, and which is placed there for the benefit of the insurance company, may be waived by the company, and such waiver may be either in expressed terms or by the conduct of the company.

"2. If you find from the evidence that the entire premium due upon the said policy of insurance had not been paid by the plaintiff to the defendant at the date of the fire, but that the mode of dealing and the conduct of said company, or its duly authorized agent, induced the plaintiff to believe that the prompt payment of the premium would not be insisted upon as provided by the policy, such conduct on the part of the company would be a waiver of the right to forfeit the policy on account of such non-payment of a portion of the premium, and would not prevent the plaintiff from recovering in this action, nor the fact that he neglected the same before the fire affected his right to recover, if you find from the evidence that no demand for payment was made upon him by the said company for said balance of premium.

"3. You are further instructed that if you find from the evidence that sufficient money had been paid in on the policy of insurance, which is the basis of this action, to carry the policy at short rates beyond the date of the fire, and

pay the company for such time for the risk assured, and
such sum was received and accepted by the company with-
out objection, and that a credit was extended by said com-
pany to said plaintiff for the balance of said premium, and
no demand was ever made upon the said plaintiff for the
said balance, then the fact that the entire premium specified
in the policy had not been paid at the date of the fire
would not prevent the plaintiff from recovering in this
action, but you should deduct from your verdict, if you
find for the plaintiff, the amount of the unpaid premium,
with interest from May 28, 1885, to said date of its tender,
December 14, 1885."

That the conditions contained in a policy of insurance
intended for the benefit of the company may be waived by
it, is firmly settled by the decisions of this court; and
the same is true as regards the terms of a policy relating
to the payment of the premiums. (*Phœnix Ins. Co. v.
Lansing,* 15 Neb., 494; *Schoneman v. Ins. Co.,* 16 Id.,
404.)   It is claimed that there is no evidence that the con-
duct of the company constituted a waiver.   There is abun-
dant evidence in the record that this company had often
extended time to others for the payment of premiums;
that the plaintiff had been given time by the defendant in
which to pay premiums on other policies; that the policy
in suit was delivered without payment of the premium,
and that the company usually sent its collectors around
to collect unpaid premiums, but had never demanded
payment of the plaintiff.   Again, long after the policy had
been delivered, the defendant, without objection, received
all but three dollars and a half of the amount agreed to be
paid for carrying the risk for the year.   The money thus
paid was retained, and only after a loss did it occur to the
defendant that it should be returned to the assured.   When
the nine dollars was offered, the defendant should have in-
sisted that the balance be paid then, and if not so paid, it
should have refused to receive the money.   Instead of do-

37

ing that, it accepted the amount tendered and extended the time for the payment of the balance. Having elected to consider the policy in force by the acceptance of a part of the premium when tendered, it cannot, after a loss, urge as a defense that it was not all paid. More than enough had been received by the defendant to carry the risk past the date of the fire, at the customary short rates. It is also in evidence that Judge Doane, who was then representing the plaintiff, called upon the general manager of the company, Mr. Hart, after the fire, and called his attention to the fact that the whole premium had not been paid, and inquired if that was the objection to the payment of the loss. To this inquiry Mr. Hart replied that "he did not want to take advantage of that fact; if there was nothing else than that, that they were not disposed to take advantage of the fact that the premium had not all been paid." It is evident that the defendant regarded the condition of the policy in relation to the payment of the premium waived. Counsel for the plaintiff in error is mistaken when he says that the first instruction "assumes that the condition of the policy was placed in the policy for its own benefit." The language used will not bear such a construction. Besides, this condition is for the benefit of the company; it was not inserted for the benefit of the assured. That part of the second and third instructions relating to the failure of the defendant to demand the premium is based upon the testimony of Mr. Goodwin, the assistant secretary of the company, and other witnesses, to the effect that it was usual to send around a collector monthly to collect unpaid premiums. The plaintiff had a right to expect that the money would be called for. These instructions taken together fairly submitted to the jury the question of waiver by the company of the condition of the policy relating to the payment of the premium.

Error is assigned upon the refusal of the court to give the following requests of the defendant:

"1. The jury are instructed that the plaintiff cannot recover in this case if the jury find that the entire premium contracted to be paid by plaintiff was not paid to the defendant before the loss occurred, unless you find that an agent of the defendant or officer of the company, or some one having authority so to do, waived the payment of the same and that such waiver of payment was the reason why plaintiff did not pay the same.

"2. The jury are instructed that even though they find that some one had authority to waive the payment of the premium or any portion thereof until such time as might suit the plaintiff, and did so waive the same, and you further find that the plaintiff did have the means and could have paid the premium before the loss but for the fact that he forgot to do so, that the plaintiff cannot recover in this action, nor would the fact, if you should so find from the evidence, that the plaintiff offered or tendered to the defendant after the loss such unpaid part of the premium, relieve the plaintiff from his neglect to pay said premium before the loss, because he had forgotten so to do."

The first request doubtless stated the rule correctly, and its refusal would call for the reversal of the case were it not for the fact that the instructions given stated the law upon the question of waiver quite as favorable to the defendant.   The defendant's second request was objectionable in that it stated "if the plaintiff did have the means and could have paid the premiums before the loss, but for the fact that he forgot to do so, that the plaintiff cannot recover."   It certainly was immaterial whether the plaintiff had the means to pay the premium or not.   His right to recover for the loss did not depend upon that.   The waiver of the conditions in the policy relating to payment of the premium did not depend upon the assured's ability to pay.

The company claims that after the policy was written, "the risk was increased by means within the control or knowledge of the assured."   At the time of the issuing

of the policy, and from thence until the loss occurred, the building insured was occupied by a tenant. In August or September preceding the fire, the tenant, at his own expense and without the knowledge or consent of the plaintiff, built an addition to the building insured. The assured did not know that the addition had been constructed until after the fire. Unless the owner is chargeable with the acts of the tenant the policy was not invalidated by the erection of the addition. It cannot be said that the tenant was the agent of the plaintiff. The insured, therefore, was not bound by the acts of the tenant committed without his knowledge or consent. We believe the rule to be this: That when a tenant, without the knowledge or consent of the insured, erects an addition to the house covered by the policy, it does not avoid the policy unless it contains a stipulation to the effect that an increase of the risk by a tenant will render it null and void. (*Merrill v. Ins. Co. of North America*, 23 Fed. Rep., 245; *Sanford v. Mechanics, etc., Ins. Co.*, 12 Cush., 541; *White v. Ins. Co.*, 8 Gray, 566; *Boardman v. Merrimac Ins. Co.*, 8 Cush., 583; *Franklin Fire Ins. Co. v. Gruver*, 100 Pa. St., 266.)

The testimony establishes that the fire did not originate in the addition, but that the building insured was the first to take fire and burn. The company was not in the least injured by the erection of the addition.

On this branch of the case the trial court instructed the jury that "If you find from the evidence that an addition was placed on said building after the insurance was taken, but that the same was placed there without the knowledge or consent or by the authority of the plaintiff, and was built by the tenant without the consent, authority, or knowledge of the plaintiff, and that the fire did not originate in said addition or in the building to which it was attached, then the building of such addition would not prevent the plaintiff from recovering in this action." The idea conveyed by this instruction is in accordance with the

views already expressed in this opinion and receives our approval.

It is insisted by the company that the addition at the time of the loss was used as a place of prostitution. It is undenied that the addition was used for that purpose up to within two or three weeks of the fire. While there is testimony tending to show that it was so used when the building burned, the preponderance supports the opposite theory. Mr. Johnston, the tenant, testified that it had ceased at least two weeks before the fire. If his testimony be true, it was sufficient to authorize the jury in finding that prostitution had ceased before the loss occurred. If it was not thus used when the building was burned, the fact that prostitution was at one time carried on in the addition would not prevent a recovery. Even if the premises were used for the purpose of prostitution at the time of the fire, it would not invalidate the policy. The policy does not prohibit such illegal use. Again, it is shown beyond any question that the plaintiff had no knowledge that the premises were being used for such illegal purpose, and that the loss did not occur from such use. (*Hall v. Mutual Ins. Co.*, 6 Gray, 185; *Loehner v. Home Mutual Ins. Co.*, 17 Mo., 247.) The trial court correctly stated the rule thus: "If you find from the evidence that the plaintiff in this case did not authorize, and had no knowledge of the use of said premises for prostitution, and that the property was not rented for that purpose, and that the plaintiff had no knowledge of its being used for such purposes, or control of the same, but that the same was perverted by the tenants without his knowledge or consent, the fact that it was used as a place of prostitution, if you so find from the evidence, would not prevent the plaintiff from recovering in this action, and the said policy would not be void for that reason."

The plaintiff in error asked the court to submit seven interrogatories to the jury for special findings of fact, which

being refused are made the basis of an assignment of error. In *Floaten v. Ferrell*, 24 Neb., 347, it was held that "the statute confers a discretionary power upon the trial courts either to give or withhold questions for special findings of fact. Like other powers, the exercise of which are left to the discretion of courts, this is not to be abused or exercised arbitrarily, or through caprice." This is the correct construction of the statute. We fail to see any special reasons for presenting to the jury the questions propounded by the company, or that there was any abuse of discretion in refusing them. We perceive no error in the record and the judgment of the lower court is

AFFIRMED.

THE other judges concur.