ROYAL EXCH. ASSUR. OF LONDON v. THROWER.

(Circuit Court of Appeals, Fifth Circuit. December 17, 1917.)

No. 3113.

1. INSURANCE ☞319(1)—FIRE INSURANCE—BREACH—OCCUPANCY.

　　Breach of a provision in a fire policy with reference to occupancy avoids the policy, notwithstanding the absence of a causal connection between the increased hazard and the origin of the fire.

2. INSURANCE ☞146(2)—FIRE POLICIES—CONSTRUCTION.

　　The language of a fire policy being that of the insurance company should, where involved, prolix, and conflicting, receive that construction which will as nearly as may be give effect to all parts of the instrument and bring results as nearly approximating equity as possible.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**3.** INSURANCE ☞322—FIRE INSURANCE—INCREASING HAZARD.

Where one clause of a fire policy provided for forfeiture if the hazard should be increased by any means within the control or knowledge of the insured, while a subsequent clause of the same paragraph provided for forfeiture "if any change other than by death of the insured take place in the interest, title or possession of the subject-matter of insurance (except change of occupants without increase of hazard) whether by legal process or judgment or by voluntary act of the insured or otherwise." Other clauses of the policy provided that any increase of hazard should be made known to the company at the time of the renewal or the policy should be void. *Held*, that the several provisions should be construed together, and the policy will not be avoided by an increase of hazard resulting from a change in occupancy on insured's demise of the premises, unless it is within the control or knowledge of the insured.

**4.** INSURANCE ☞319(1), 668(4)—FIRE INSURANCE—INCREASE OF HAZARD.

Whether the hazard was increased by reason of conducting on the insured premises a certain business is a question of fact for determination as ordinary questions of fact, and cannot be decided by reason of the fact that the insurer charged higher rates for that character of occupancy than others.

**5.** INSURANCE ☞322—FIRE POLICIES—OCCUPANCY—CHANGE.

Where a building described as occupied for warehouse and storage purposes was unoccupied when a fire policy was written and the policy required occupancy, the subsequent occupancy of the building by the insured's lessee was not a change that increased the contemplated hazard; the policy authorizing change of occupants without increase of hazard.

**6.** INSURANCE ☞147(2)—FIRE POLICIES—WHAT LAW GOVERNS.

A fire policy issued on Georgia property is subject to the Georgia statutes with reference to the liability of fire insurers.

**7.** INSURANCE ☞319(1)—FIRE POLICIES—STATUTE.

Civ. Code Ga. 1910, § 2482, providing that any change in the property or the use to which it is applied without the consent of the insurer whereby the risk is increased voids the policy, leaves within the discretion of the insurer the matter of the effect of increase of hazard.

Appeal from the District Court of the United States for the Northern District of Georgia; William T. Newman, Judge.

Suit by the Royal Exchange Assurance of London against Marvin L. Thrower. From a decree (240 Fed. 811, 1024) in favor of defendant and allowing his claim for a set-off, complainant appeals. Affirmed.

Alex C. King and Daniel MacDougald, both of Atlanta, Ga., for appellant.

George Westmoreland and Wm. D. Ellis, Jr., both of Atlanta, Ga., for appellee.

Before WALKER and BATTS, Circuit Judges, and GRUBB, District Judge.

BATTS, Circuit Judge. An insurance policy was issued by appellant company upon property thus described:

"The following described property, while located and contained as described as contained herein and not elsewhere, to wit, M. L. Thrower, $5,000.00 on the one-story, frame, composition-roof building and additions thereto attached, occupied for warehouse and storage purposes, and situated on Irwin street, Sampson street and the Southern Railroad, in Atlanta, Georgia."

The policy was subject, in favor of Mrs. Caroline Hertzfeld, to the standard mortgage clause, which provided that:

"The interest of the mortgagee could not be invalidated by any act or neglect of the mortgagor * * * nor any change in the title or ownership of the property, nor by the occupation of the premises for purposes more hazardous than are permitted by the policy."

The insured property having been totally destroyed by fire, the insurance company paid the amount of the policy to Mrs. Hertzfeld, took an assignment from her of the note secured by the mortgage, and instituted suit against the appellee thereon. The defendant asking for recovery on the policy, plaintiff replied that the policy had been avoided by a change of occupancy increasing the hazard. Judgment was for defendant.

At the time of the issuance of the policy, the premises were not occupied. Thereafter the property was leased to and occupied by the A. A. Smith Cotton Products Company, which concern carried on a business which involved the storage of cotton and certain cotton manufacturing processes. It is claimed that this occupancy was more hazardous than that indicated by the description of the property insured as being "occupied for warehouse and storage purposes." Pertinent provisions of the policy are as follows:

"This entire policy * * * shall be void * * * if the hazard be increased by any means within the control or knowledge of the insured; * * * or if any change, other than by the death of the insured, take place in the interest, title or possession of the subject matter of insurance (except change of occupants without increase of hazard) whether by legal process or judgment, or by voluntary act of the insured or otherwise."

The property insured was burned as the result of a fire which started in another building, the character of the occupancy having no relation thereto.

[1] It seems to be the law that a breach of the provision with reference to occupancy avoids the policy, notwithstanding the absence of a causal relation between the increased hazard and the origin of the fire. Imperial Fire Insurance Co. of L. E. v. Coos County, 151 U. S. 452, 14 Sup. Ct. 379, 38 L. Ed. 231; German Fire Insurance Co. v. Deckard, 3 Ind. App. 361, 28 N. E. 868.

A different conclusion would seem to be more consonant with the established principles of equity. But, assuming this to be the law, and recognizing that the result could follow only from a very strict, technical, and literal construction of the policy, and applying also the principle that forfeitures are not favored in equity, this policy will not be held to have been forfeited, unless it clearly appears that its terms have been violated.

[2, 3] It is quite possible to consider the provisions of the policy which have been cited as correlative, instead of antagonistic. The policy recognizes that the risk may be increased without the knowledge of the insured, and as the result of something beyond his control; and the stipulation is that a forfeiture shall take place only in case the increase is within his control and within his knowledge. The contract contemplates that there might be changes in the occupancy

While forbidding any change in possession, other than this change of occupants, it evidently regards such a change an ordinary incident of the use of realty, not requiring cancellation. This change, however, of the occupants must be one without increase of hazard. There is nothing to indicate that while all other increases of hazard must, in order to bring about a forfeiture of the contract of insurance, be within the knowledge of the insured, increase of hazard resulting from a change of occupants will avoid the policy, whether the insured has a knowledge of the increase of hazard or not. The evident general policy of the insurance contract is to create a forfeiture only when the insurer is to blame, and it will not be assumed that this general policy is departed from with reference to a matter to which it ought peculiarly to apply unless that purpose is made manifest.

The language of an insurance policy is the language of the company. It is prolix, involved, conflicting. Important provisions, printed in small type, are rarely read by policy holders. If read, the policy holder would know little more about the contract entered into. If the companies desire clearness, there would appear to be no good reason why it should not be attained; and, in its absence, the courts will give that construction which will, as nearly as may be, give effect to all parts of the instrument and bring results as nearly approximating equity as possible.

The insurance companies have shown no lack of capacity in so framing language as to protect themselves, and, if they had intended the result herein contended for, the first of the clauses would doubtless have read something as follows:

"This policy shall be void if the hazard be increased by any means within the control or knowledge of the insured, and if increased by a change in occupants, whether or not within his knowledge or control."

· The construction given the quoted provisions of the policy is supported by other clauses. The following clause would seem to require knowledge of the increase of hazard upon a renewal, and evidently contemplates that it may to that time continue effective notwithstanding increase:

"The policy may by renewal be continued * * * provided that any increase of hazard must be made known to this company at the time of the renewal or this policy shall be void."

Another clause provides for return of premium if the "policy shall be canceled * * * or become void or cease."

Notwithstanding the separation within the paragraph of the clauses of the policy first cited, the conclusion is reached that they must be construed together, and it is held that an increase of hazard resulting from a change in occupants must be within the control or knowledge of the insured.

This conclusion is not without something of support in the authorities. Merrill v. Ins. Co. of N. A. (C. C.) 23 Fed. 245; 3 Joyce on Insurance, § 2222; N. B. Merc. Co. v. Union S. Y., 120 Ky. 465, 87 S W. 285; East Texas F. Ins. Co. v. Kempner, 12 Tex. Civ. App. 533,

34 S. W. 396; Northern Assur. Co. v. Crawford, 24 Tex. Civ. App. 574, 59 S. W. 916; Neb. Ins. Co. v. Christiensen, 29 Neb. 565, 45 N. W. 928, 26 Am. St. Rep. 407.

There is nothing to indicate that the insured had any knowledge of the fact, if it be a fact, that the lease of his property resulted in a change of occupancy with increase of hazard. On the contrary, the testimony is to the effect that the building was leased without any knowledge on the part of the lessor that it would be used for any purpose involving an increase of hazard over the use of the building as a warehouse, and the trial judge so held. Nor was the matter within control of lessor. He might, indeed, have stipulated to the contrary. But there was nothing at the time of the lease suggesting the necessity for such stipulation, and if the stipulation had been made the hazard could have been increased without his knowledge, and therefore beyond his control. A matter beyond one's knowledge is rarely within his control.

[4] There are a number of dangerous and combustible materials which may not, under the terms of the policy, be placed in the house insured. Other than these named articles, the use of the house as a warehouse and for storage might bring into it anything whatever, and it is quite impossible to say that the storage of cotton or the manufacture of cotton products is an increase of hazard over every use to which a building could be placed as a warehouse or for storage purposes. It is not possible to agree to the proposition which seems to have been made in some cases, to the effect that the fact that insurance companies charge more for some characters of occupancy than others is conclusive as to the increased hazard of the risk carrying the increased rate. Whether there is increase of risk is a question of fact to be determined as any other fact, and not by a prior conclusion of one of the interested parties, not participated in or binding upon the other. The facts with reference to the possible hazards of a storage or warehouse business, and the facts with reference to the hazards of the business of the occupant at the time of the fire, have been inadequately developed; but, certainly, it is not a necessary inference from the evidence that the hazard was increased, nor is one to conclude, from his general knowledge of products which may be stored and manufacturing processes which may be utilized, that the manufacturing necessarily carries an increase of dangers.

[5] At the time the policy was written, the insured was in possession as the legal owner, but the building was unoccupied. The policy required occupancy. The occupancy of the building cannot then be said to be a change that was not contemplated, and cannot be said to be a change that increased the contemplated hazard. Legal possession remained as before, and the occupancy was not changed. The policy therefore has not been voided.

It will be noted that the paragraph dealing with change of title, interest, and possession excepts, not a "change of occupancy without an increase of hazard," but a "change of occupants without increase of hazard." There is a difference between "occupancy" and "occupants," and it is not seen how a change of the latter may ordinarily increase

any hazard other than the moral hazard. There is nothing to suggest such an increase of hazard in the instant case.

The conclusion has not been reached without a very strict construction of the policy. If such a rule of construction is followed in holding that the policy is avoided by an increase of hazard having no relation to a loss, it ought not to be departed from when other effects of the policy are considered.

[6, 7] It is insisted that section 2482, Civil Code of Georgia, should control the disposition of the case. The law would, of course, supersede or modify the terms of an insurance policy if that were intended; but it is evident from the terms of the section that the mattter of the effect of increase of hazard was left within the discretion of the insurer.

The judgment is affirmed.