NATIONAL UNION FIRE INS. CO. OF
PITTSBURGH, PA., v. RICHARDS.
(No. 449.)

(Court of Civil Appeals of Texas. Waco. Jan. 27, 1927.)

1. Insurance ⬅565(8)—Plaintiff, suing under fire policy, must prove alleged total loss under general denial (Rev. St. 1925, art. 4929).

General denial to action on fire policy puts plaintiff on proof of allegation that building was total loss, within meaning of Rev. St. 1925, art. 4929.

2. Insurance ⬅665(4)—Insured did not sustain burden of proving total loss under fire policy, under evidence showing remnants of building remaining after fire.

In action on fire policy for total loss, insured, showing that certain remnants of building remained standing after fire without showing suitability of remnants for reconstructing building or their value, held not to have sustained burden of proving total loss.

3. Insurance ⬅668(13)—In suit on fire policy, whether remnants of building, claimed total loss, could be used in reconstructing building held for jury (Rev. St. 1925, art. 2190).

In action under fire policy for total loss, whether remnants remaining after fire constituted substantial part, as compared with value of entire building, and whether reasonably prudent owner, uninsured, would utilize such remnants was issue of fact for jury, which should

have been submitted on proper request, in view of Rev. St. 1925, art. 2190, in absence of evidence as to condition or value of remnants.

4. Insurance ⬅565—Insurer's adjuster's authority is usually limited to ascertainment and adjustment of loss.

Authority of adjuster of insurer is usually limited to ascertainment and adjustment of loss.

5. Evidence ⬅244(8)—Insurer's adjuster's statement to insured that building was total loss is admission against insurer's interest.

Statement of insurer's adjuster to insured after fire that building was total loss was in nature of an admission by adjuster against insurer's interest.

6. Evidence ⬅200—"Admission" is voluntary acknowledgment of existence of particular fact, admissible against party making same or to whom it is legally attributable.

"Admission" is voluntary acknowledgment of existence of particular fact, and statement, amounting to admission, is competent against party making same or to whom it is legally attributable, as in case of principal and agent.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Admission (In Evidence).]

7. Evidence ⬅201—Statements or admissions on questions of law are not admissible in evidence.

Statements or admissions relating to questions of law are not admissible in evidence.

8. Evidence ⬅244(8)—Value and adaptability, for reconstruction of remnants of building after fire were matters of fact, about which insurer's adjuster might make admissions against insurer.

In action under fire policy for total loss, questions whether remnants remaining after fire were substantial, whether they could be used in reconstructing building, and whether reasonably prudent person, uninsured, would have so used them were matters of fact, about which insurer's adjuster might make statements admissible in evidence as an admission against insurer.

9. Evidence ⬅244(8)—Statement by insurer's adjuster that building, destroyed by fire, was total loss held conclusion of law, inadmissible against insurer (Rev. St. 1925, art. 4929).

In action under fire policy for total loss, whether value and condition of remnants remaining after fire showed building to be total loss, within meaning of Rev. St. 1925, art. 4929, was question of law, and insurer's adjuster's statement to insured that building was total loss was conclusion of law, inadmissible against insurer.

10. Evidence ⬅261—Statement offered as admission is considered same as statement offered as part of witness' testimony, as respects its admissibility.

In determining admissibility of statement by insurer's adjuster that building destroyed by fire was total loss, there is no distinction between

statement offered as an admission and statement offered as part of testimony of witness on stand.

**11. Insurance ⚖➡146(3)—Forfeiture provision of fire policy will be construed to prevent forfeiture, if fairly susceptible of such interpretation.**

Provision avoiding fire policy if hazard is increased by means known to insured, being one of forfeiture, language will be construed so as to prevent forfeiture, if fairly susceptible of such interpretation.

**12. Evidence ⚖➡14—Use of some residences for incidental accommodation of roomers and of others primarily for roomers are matters of common knowledge.**

That dwelling houses, primarily used as residences for families, are also frequently used for incidental accommodation of roomers, and that many houses in resident districts are used primarily to accommodate roomers, are matters of common knowledge.

**13. Insurance ⚖➡319(1)—Incidental use of dwelling for three or less roomers does not materially increase hazard so as to authorize forfeiture, under provision avoiding fire policy for increased hazard.**

Under insurance schedule, adopted by fire insurance commission, classifying building in which more than three rooms are rented at one time as rooming house, but making no additional premium charge where three or less rooms are rented, incidental use of dwelling for accommodation of roomers, within limit permitted, does not destroy its character as dwelling nor constitute material increase of hazard as to authorize forfeiture, under provision avoiding fire policy for increase of hazard known to insured.

**14. Insurance ⚖➡319(1)—Only substantial increase of risk works forfeiture of policy, avoided for increase in hazard.**

Under provision avoiding fire policy for increase in hazard by means known to insured, only substantial increase of risk will ipso facto work forfeiture.

**15. Insurance ⚖➡319(1)—Insured's lack of knowledge of renting of rooms by tenants in dwelling insured prevented forfeiture, under provision avoiding policy for increase of hazard within control or knowledge of insured.**

Where fire policy covering building occupied by tenants was to be void on increase of hazard within control or knowledge of insured, insured's lack of knowledge of renting of rooms by tenants prevented forfeiture of policy as result of breach of provision against increasing hazard.

**16. Insurance ⚖➡654(1) — Evidence that insured did not know renting of rooms by tenant was material to risk was admissible to rebut alleged knowledge by insured of renting, claimed to have increased hazard.**

In action on fire policy, claimed to have been forfeited by increase in hazard due to tenant's renting premises to more than three roomers, it was competent for insured to testify that he did not know such renting was material to risk to show that there was no reason why any objec-

tive evidence of such renting would attract his attention on visits to premises.

Appeal from District Court, McLennan County; Giles P. Lester, Judge.

Action by Ben C. Richards against the National Union Fire Insurance Company of Pittsburgh, Pa. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

See, also, 278 S. W. 488.

Thompson, Knight, Baker & Harris, of Dallas, Witt, Terrell & Witt, of Waco, for appellant.

Williams, Williams, McClellan & Lincoln, of Waco, for appellee.

GALLAGHER, C. J. This is a suit by appellee, Ben C. Richards, against appellant, the National Union Fire Insurance Company, of Pittsburgh, Pa., to recover on a fire insurance policy issued to him by appellant covering a certain two-story, shingle roof, frame building, occupied by a tenant. Appellee alleged that said building was totally destroyed by fire, and that appellant, by reason thereof, became liable to him for the sum of $6,000, the amount specified in said policy. He further alleged that appellant was notified of said loss, and that its agent inspected the same and agreed with him that the loss was total, but, notwithstanding the same, appellant refused to pay said loss. The evidence disclosed that said house had been occupied by three successive tenants; that all of said tenants resided in said house during their respective tenancies; that, at least, 'two of such tenants rented spare rooms in said house to roomers when they were able to do so, but that there were no rooms rented at the time of the fire. There was no attempt to show that the fire was in any way connected with such renting of rooms. The case was submitted to a jury on special issues. The jury found in response thereto that appellee's tenants who occupied said house rented more than three rooms therein to roomers at one time; that the renting of more than three rooms to roomers at one time operated to increase the fire hazard, but that appellee did not know that any of his said tenants rented more than three rooms to roomers at any one time. The other findings of the jury are not material to the issues presented by appellant in this appeal. The court rendered judgment against appellant in favor of appellee for the sum of $6,000, with interest and costs of suit. Appellant here presents said judgment for review.

### Opinion.

[1] Among the defenses pleaded by appellant was a general denial. Such denial put appellee on proof of his allegation that said building was a total loss, within the meaning

of article 4929 of the Revised Statutes 1925, which, so far as applicable, reads as follows:

"A fire insurance policy, in case of a total loss by fire of property insured, shall be held and considered to be a liquidated demand against the company for the full amount of such policy."

Appellee testified that the house was a two-story, shingle roof, frame building on a brick pier foundation; that "the only thing that was left standing of the building after the fire was a part of the front wall, the two high chimneys, and some other rubbish"; that he could not tell the condition of the brick piers under the house after the fire; that he guessed some of them were broken down, and some not; that said piers were square brick pillows, 18 inches, 2 feet, or 2½ feet square, and about 2½ or 3 feet above the ground; that he could not answer whether any of said piers had been knocked down because he didn't pay any attention thereto. Appellant's local agent testified that he inspected the premises shortly after the fire and found "nothing left but the chimney standing, some part of the walls, and a part of the foundation." Appellant sent an adjuster to inspect the loss, and he told appellee that the building was a total loss. Appellee and one of the witnesses in the case, respectively, in testifying, spoke of said building as having been "destroyed by fire." This is substantially all the testimony in any way bearing on the issue of total loss. Appellant requested the court to submit to the jury the following special issue:

"Would a reasonably prudent person, uninsured, have used the remnants of the building insured, under the policy sued on, remaining after the fire complained of in this suit, as a basis for restoring such building to the condition in which it was before the fire?"

The court refused to submit the same. Such refusal is presented as ground for reversal.

The test to be applied in determining when an insured building is a total loss, within the meaning of the statute above quoted, has been prescribed by our Supreme Court, and by our Commission of Appeals with the approval of said court. Our Supreme Court in Royal Insurance Co. v. McIntyre, 90 Tex. 170, 182, 37 S. W. 1068, 1074 (35 L. R. A. 672, 59 Am. St. Rep. 797), after an extensive review of authorities on the question said:

"After a careful consideration of the question we are of opinion that there can be no total loss of a building so long as the remnant of the structure standing is reasonably adapted for use as a basis upon which to restore the building to the condition in which it was before the injury; that whether it is so adapted depends upon the question whether a reasonably prudent owner, uninsured, desiring such a structure as the one in question was before injury, would, in proceeding to restore the building to its original condition, utilize such remnant as such basis."

This rule was recognized and applied by the Commission of Appeals in Fire Association of Philadelphia v. Strayhorn, 211 S. W. 447, 448, 449. In that case there was some evidence that the lower half of two side walls of the burned building were suitable for use in rebuilding, and also testimony to the contrary. There was no testimony as to the value of such remnant of the building, if usable, and no testimony with reference to the cost of reconstruction with or without the use thereof. The court submitted a general issue, asking the jury to determine whether the building was a total loss, but refused a special issue requested by the insurance company, which was substantially the same as the issue requested by appellant in this case. We quote from the opinion of the court in that case as follows:

"No evidence was adduced as to the value of the remaining walls or the comparative cost of reconstruction, using such walls, or building entirely anew. Evidence of this character is admissible upon the issue of total loss and is potent in a determination thereof. The evidence as to the remaining walls and their condition was sufficient to raise the issue. The absence of evidence as to value of the remnant and cost of reconstruction did not preclude the right of defendant to a correct charge on total loss and submission of the issue whether a reasonably prudent owner, uninsured, desiring to reconstruct the building, would use the remnant as a basis for such reconstruction. We are of opinion * * * that the special issue requested by defendant should have been submitted."

The last case by the Commission of Appeals on the question cited by appellant is National Liberty Insurance Co. v. Dansby, 260 S. W. 1040, 1041. In that case the superstructure or building proper was burned away, so that nothing remained of any value or utility for use in reconstructing the building except two stone steps and a concrete foundation. In that case the insurance company offered testimony tending to show that said steps and foundation were uninjured, that they were of substantial value, and that a reasonably prudent owner, without insurance, who desired to rebuild the building as it was before the fire, would use the same in doing so. The court excluded the testimony so offered. The Commission of Appeals held said testimony admissible and said:

"It is a question of fact as to whether the foundation of the building is a substantial part of the structure, as compared with the value of the entire building, and, if so, then it is a further question of fact as to whether or not it is reasonably adapted for use as a basis upon which to restore the building."

[2, 3] In each of said cases by the Commission of Appeals the holdings of the Commission were expressly approved by the Supreme Court. The right of appellant, upon proper request, to have every controverted issue of fact submitted to the jury for determination

is statutory. R. S. 1925, art. 2190. It devolved upon appellee to prove that the building, as a result of said fire, was a total loss. He could have done so by showing that it was entirely destroyed. He did not do so. He showed on the contrary, that certain remnants of the building remained standing after the fire. The condition of such remnants with reference to being suitable or unsuitable for use in reconstructing the building and the reasonable value of the same, if suitable and so used, were not shown. Neither was there any evidence tending to show whether the value, if any, of such remnants in the aggregate did or did not constitute a substantial part, as compared with the value of the entire building. Having no evidence with reference to the condition or value of such remnants, nor whether their use would result in a substantial reduction in the cost of reconstruction, we cannot say that reasonable minds might not differ with reference to whether such remnants constituted a substantial part, as compared with the value of the entire building, and whether a reasonably prudent owner, uninsured, desiring such a structure as the one in question was before injury, would, in proceeding to restore the building to its original condition, utilize such remnants in doing so. Such issue of fact should have been submitted to the jury when a proper request for such submission was made. Insurance Co. v. Strayhorn, supra.

[4, 5] We are not unmindful of the fact that appellee testified that appellant's adjuster told him that the building was a total loss. Appellant promptly objected to said testimony, and the objection was overruled. The authority of an adjuster is usually limited to the ascertainment and adjustment of the loss. 26 C. J. pp. 413, 414, § 533. There is no contention that an adjustment was made in this case. The statement testified to by appellee was in the nature of an admission by appellant's adjuster against its interest. The circumstances under which it was made are not further shown than that the adjuster had inspected the burned building, and that he and appellee were talking about the situation at the time. We may assume in favor of the admissibility of said statement that the matter of making or refusing to make an adjustment of the loss was the subject of discussion in said conversation, and that the statement was therefore about a matter within the scope of said adjuster's authority and in which he was engaged at the time, so as to make such statement, if otherwise competent, admissible in evidence. 22 C. J. pp. 367–370, § 440.

[6] An admission is defined as being the voluntary acknowledgment of the existence of a particular fact. 22 C. J. p. 296, § 323. A statement amounting to an admission of the existence of a relevant matter of fact is competent evidence against the party by whom the same was made or to whom it is legally attributable, as in case of principal and agent. 22 C. J. p. 297, § 324.

[7, 8] On the other hand, statements or admissions relating to a question of law are not admissible in evidence. 22 C. J. p. 298, § 325. Whether the remnants of the burned building constituted a substantial part as compared with the value of the entire building, and whether such remnants were reasonably adapted to use as a basis upon which to reconstruct the building and whether a reasonably prudent person, uninsured, desiring to restore the building would have so used them, were matters of fact. About any or all these matters said adjuster might have made a statement admissible in evidence as an admission.

[9, 10] Whether the facts existing with reference to these matters as seen and understood by said adjuster, as the result of his inspection or otherwise, showed that said building was a total loss, within the meaning of the statute above quoted, was a question of law. Since said statement was a conclusion of law on the part of appellants' adjuster, it was not admissible in evidence over appellant's objection. In respect to admissibility, there is no distinction between such a statement offered as an admission and the same statement offered as a part of the testimony of a witness on the stand. Our Supreme Court, in the case of Brown v. Mitchell, 88 Tex. 350, 367, 31 S. W. 621, 629 (36 L. R. A. 64), speaking on this subject, said:

"We think that the authorities cited, upon established and sound principles of law, will maintain the conclusion as correct, that no witness will be permitted to testify to a legal conclusion from facts given either by himself or testified to by another."

See, also, Berger v. Kirby, 105 Tex. 611, 615, 153 S. W. 1130, 51 L. R. A. (N. S.) 182; Stewart v. Miller (Tex. Civ. App.) 271 S. W. 311, 320; Williams v. Livingston, 52 Tex. Civ. App. 275, 113 S. W. 786, 787, and authorities there cited.

Appellant contends that the policy sued on had long before the fire become null and void by reason of a breach of the promissory warranty against increase of hazard contained therein, and presents said contention as ground for reversal by several separate propositions. Said policy insured appellee's building "while occupied by a tenant, and not otherwise, as a dwelling house." It contained the following provision of forfeiture:

"This policy, unless otherwise provided by agreement indorsed hereon and added hereto, shall be void * * * if the hazard be increased by any means within the control or knowledge of the insured."

[11] The policy contained no such indorsement. The testimony showed that each tenant, who occupied said building, was the head of a family and with such family resided

therein during his or her tenancy. The testimony further showed that, at least, two of said tenants rented rooms in said building to roomers. No rooms were rented at the time of the fire. The testimony further showed that the fire hazard of a rooming house was greater than the hazard of a dwelling, and that the greater the number of rooms rented the greater the hazard. There was also testimony that the fire insurance commission of the state, prior to the issuance of the policy sued on, had issued a general basis schedule, prescribing the classification of buildings and the rates to be charged for insuring buildings in each class; that in classifying dwellings and fixing premiums for the insurance of the same, where three rooms or less were rented, such schedule provided that no extra charge should be made, but that where more than three rooms were rented such dwellings should be classed as rooming houses. There was also testimony that the rates prescribed for rooming houses were higher than those prescribed for dwellings. The jury, as before stated, found that more than three rooms were rented to roomers at one time, and that such renting increased the fire hazard, but further found that appellee did not know of such renting. The gist of the contentions advanced by appellant in his said several propositions is that the renting of even one room was a violation of said provision and worked a forfeiture of the policy sued on, and that appellant's lack of knowledge of the renting of rooms by his tenants did not prevent such forfeiture. The provision under consideration being one of forfeiture, the language used therein will be construed so as to prevent such forfeiture, if fairly susceptible of such interpretation. Brown v. Palatine Ins. Co., 89 Tex. 590, 595, 35 S. W. 1060.

[12] It is a matter of common knowledge that dwelling houses used primarily as places of residence for families are also frequently used for the incidental accommodation of guests, boarders, or roomers. On the other hand, it is a matter of common knowledge that many houses, situated in residence districts and adapted to residence purposes, are used primarily for the accommodation of boarders or roomers, and the occupancy of the same by the family of the proprietor is merely incidental. In such cases, whether a building is used primarily for residence purposes, or only incidentally for such purposes, may be difficult to determine.

[13,14] It therefore becomes apparent that some arbitrary classification is reasonable and proper. We think the general basis schedule, introduced in evidence by appellant, fairly construed, recognizes and by necessary implication covers this situation. Said schedule deals with classification as well as premium charges. These matters are not treated separately and at length, but they are blended and abbreviated and arranged in tabular form. Dealing with both the classification of dwellings for the purpose of insurance and the premium charges to be exacted for insuring the same, all in one table, it is provided that, where three or a less number of rooms are rented to roomers at one time, no additional premium charge shall be made, but that, when more than three rooms are so rented at one time, the building shall be classed as a rooming house. We conclude therefore that the incidental use of a dwelling house for the accommodation of roomers, within the limit so permitted, does not destroy its character as a dwelling, nor constitute such a material increase of hazard as to require an additional premium or to authorize a forfeiture under the terms of the policy relied on by appellant. Only a substantial increase of risk or hazard will ipso facto work a forfeiture. Crane et al. v. City Insurance Co. (C. C.) 3 F. 558, 561, 562; 2 Cooley's Briefs on Insurance, p. 1637, par. (j); 13 Am. & Eng. Ency. of Law, p. 286, par. (b), and note 3.

[15] Whether the renting of more than three rooms to roomers at any one time, as found by the jury to have been done in this case, worked an immediate forfeiture of the policy, notwithstanding such fact of renting was not known by appellee, depends upon a proper construction of the particular language used in said provision. According to such language, the policy is to be void only when the hazard is increased within the control or knowledge of the insured. Said policy expressly provides that the occupancy of the building shall be by tenants. The acts complained of and relied on by appellant as working a forfeiture were the acts of appellee's tenants. There is, as might be expected, some conflict in the authorities with reference to the proper construction of this rather vague provision. Excluding cases involving the construction of other and more onerous provisions, we think the weight of authority is that appellee's lack of knowledge of the renting of rooms by his said tenants prevented a forfeiture of said policy as a result of the breach of said provision. Royal Exch. Assur. of London v. Thrower, 159 C. C. A. 70, 246 F. 768 et seq.; Id. (D. C.) 240 F. 811, 814–817; Northern Assur. Co. v. Crawford, 24 Tex. Civ. App. 574, 59 S. W. 916; North British Mercantile Ins. Co. v. Union Stockyards Co., 120 Ky. 465, 87 S. W. 285, 287; Nebraska & I. Ins. Co. v. Christiensen, 29 Neb. 572, 45 N. W. 924, 927, 26 Am. St. Rep. 407; London & Western Trust Co. v. Canada Fire Ins. Co., 13 Ont. L. Rep. 540, 7 Ann. Cas. 386, 387, 388, authorities there cited and note thereto; Merrill v. Insurance Company of N. A. (C. C.) 23 F. 245; East Texas Fire Ins. Co. v. Kempner, 12 Tex. Civ. App. 533, 34 S. W. 393, 396; Rife v. Lebanon Mutual Ins. Co., 115 Pa. 530, 6 A. 65, 2 Am. St. Rep. 580; McGonigle v. Susquehanna Mutual Fire Ins. Co., 168 Pa.

1, 31 A. 868, 874; 4 Joyce on Insurance (2d Ed.) § 2222; 26 C. J. p. 197, § 239, and authorities cited in note 39 thereto; 14 R. C. L. § 327, pp. 1145, 1146, and note 3; 13 Am. & Eng. Ency. of Law, p. 286, and note 5.

[16] Appellee was permitted, over the objection of appellant, to testify that he did not know that the occupancy of said building by roomers would increase the fire hazard. Appellee had testified that he did not know that any of his tenants rented or contemplated renting rooms. Appellant, by cross-examination of appellee and by other testimony, sought to show that appellee had been in the building on two or more occasions for the purpose of consulting with his tenants with reference to needed repairs, as tending to show that he must have known that rooms were being rented as a result of ordinary casual observation. We think it was competent for appellee in this connection to testify that he did not know that such renting of rooms was material to the risk, as tending to show that there was no reason why any objective evidence of such renting would attract his attention on such visits.

The judgment of the trial court is reversed and the cause is remanded.